**Richard L. SCHOLTZ, Dale Wells and Royal Stables, Inc., Appellants,**

v.

**Deborah SIGEL, Appellee.**

**No. 20249.**

Court of Civil Appeals of Texas, Dallas.

June 9, 1980.

William D. Sims, Jr., Jenkens & Gilchrist, Dallas, for appellants.

Bill M. Glaspy, Mesquite, Whitley R. Sessions, Dallas, for appellee.

Before ROBERTSON, CARVER and HUMPHREYS, JJ.

HUMPHREYS, Justice.

Richard L. Scholtz, Dale Wells and Royal Stables, Inc. appeal from a joint and several judgment against them of $3,500.00, plus $1,200.00 attorney's fees for violations of the Deceptive Trade Practices Act (DTPA), Tex.Bus. & Com.Code Ann. § 17.46 (Vernon Supp.1980). We reverse and remand because the evidence is insufficient to support the court's finding that the horse had no value when Sigel purchased it for $1,500.00, thus rendering the damages incorrect.

Around May of 1976, Deborah Sigel went to the premises of Royal Stables, Inc. to ride horses and to purchase a horse. Scholtz was a principal stockholder in the corporation, and Wells was manager of the stable. Sigel saw a registered quarterhorse named Cherrys Bay Boy which was priced to her at $1,500. She expressed to Wells an interest in purchasing Cherrys Bay Boy. Wells suggested another horse to Sigel which would cost $2,000.00. After riding Cherrys Bay Boy, and after a veterinarian had given the horse a soundness test, Sigel purchased Cherrys Bay Boy for $1,500.00. Sigel brought this action under section 17.-46(b)(1), (2), (5) and (7) of the DTPA, assert-

ing that all three appellants had misrepresented to her that the horse was good for show purposes.

After a non-jury trial the court found violations of all four sections of the DTPA. Two of these sections provide that deceptive acts and practices include "(5) representing that goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . ." and "(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Representing that a horse is good for show purposes falls within both of these categories. *See generally, Singleton v. Pennington,* 568 S.W.2d 367, 381 (Tex.Civ.App.—Dallas 1977, *writ granted*).

The trial court made several findings of fact and conclusions of law. The court found that Sigel purchased the horse from Royal Stables, Inc., Scholtz, and Wells, and that the horse was the property of Scholtz, but sold through Wells and Royal Stables, Inc. The court further found that Royal Stables, Inc. was wholly owned by Scholtz, his wife, and Wells, at the time, but found that Scholtz' wife made no misrepresentation. The court found that Sigel relied on the judgment of appellants, that the horse was not suitable for showing, that appellants knew the horse was not suitable for showing, and that their representations to Sigel were false. The court allowed recovery against all three appellants under the DTPA, finding Sigel's damages to be $1,500, the value she paid for the horse, less the actual market value of the horse at the time of sale, which the court found to be zero. Additionally, the court concluded that Wells was acting as agent for Royal Stables and Scholtz in his dealings with Sigel.

Appellants contend that there is no evidence or insufficient evidence to support the court's finding that the horse was not fit for any purpose and that the horse had no value. The record reveals that the horse's sire and dam had attained the highest rankings by the American Quarterhorse Association, and that appellants paid about $400 for the horse. Sigel produced no evidence or testimony as to any dollar figure on the value of the horse at the time of sale. Her two expert witnesses, Dr. Richey and Dr. Butler, were not asked to estimate the value of the horse, but were merely asked the value of registered quarterhorses generally. Dr. Richey testified that the horse was undesirable and not show quality because of his bone structure, but that he could be used satisfactorily for breeding and occasional riding. Dr. Butler, the veterinarian, testified that the horse could not be trained. When asked if the horse had any utility at all, he said no, that he wasn't fit for breeding, but that he might be used for a team on a breeding farm. Dr. Butler later testified that he agreed with the statement that the horse was "attractive enough for a weekend or occasional rider."

We conclude that this evidence is insufficient to support the finding that the horse was valueless at the time of sale. Dr. Butler's testimony that the horse had no utility is not determinative of the market value of the horse. On any subsequent trial of this case the measure of damages is the difference between the price paid for the horse and its actual value at the time of sale. *Sobel v. Jenkins,* 477 S.W.2d 863 (Tex. 1972). Sigel had the burden to prove her damages but she produced insufficient evidence concerning the actual value of the horse at the time of the sale. We therefore remand for new trial. We remand for trial on all issues because, under Tex.R.Civ.P. 434, if the amount of damages is unliquidated and liability is contested, there can be no separate trial on damages. *Little Darling Corp. v. Ald, Inc.,* 566 S.W.2d 347, 350 (Tex. Civ.App.—Dallas 1978, no writ).

Appellants assert several other points. Among them, they attack the judgment against Scholtz because they contend Sigel was not a "consumer" as to Scholtz, and there is no evidence or insufficient evidence that the horse was Scholtz' property. They do not attack the fact that there is no

finding that the horse was the property of Wells and Royal Stables, Inc. Additionally, they do not attack the conclusion that Wells was acting as agent for Scholtz and Royal Stables while dealing with Sigel. We question the conclusion that all three appellants can be liable on this record, particularly because this record is unclear as to who owned this horse. We address, however, only the points raised by appellants and hold that there is evidence to support the judgment against Scholtz. The bill of sale to Sigel, which Scholtz signed, lists Scholtz as the seller, and the certificate of registration of the American Quarterhorse Association shows Scholtz to be the prior owner of the horse. The payment for the horse was deposited in the Royal Stables account, and Scholtz, his wife and Wells were the only shareholders of Royal Stables. Sigel testified that Scholtz misrepresented that the horse was good when he stated that he hated to see the good ones go, couldn't wait for her to show the horse, and agreed Wells should train the horse.

■ Appellants also contend that there is no evidence or insufficient evidence of causation or reliance by Sigel on any misrepresentations of Wells or Scholtz. They point to the court's supplemental finding that plaintiff "made up her mind that she wanted this particular quarterhorse; and no one, including defendants, could change her mind; she rejected another horse which defendant Wells represented to be better suited to her needs." The court also found, however, that Sigel relied on the judgment and advice of Scholtz and Wells and that their representations that the horse was good for show purposes were false. We hold that there is evidence that Sigel sought appellants' advice on purchasing a horse to show and that Wells told her Cherrys Bay Boy would suit her purposes and Scholtz told her he couldn't wait until she started showing the horse. The testimony of plaintiff's expert witnesses, discussed above, supports the finding that these statements were false.

■ Appellants next argue that the court impliedly found that the statements made by appellants were not made knowingly. This argument is based on the fact that the court, in erroneously applying the 1979 amendments of the DTPA to compute the damages, limited the damages to three times the amount that did not exceed $1,000.[1] The court also found, however, that Wells and Scholtz knew that the horse was defective and not suitable for showing, and we cannot imply a finding which conflicts with this express finding.

■ Appellants also assert that they cannot be liable because Sigel prevented their right of rescission and did not comply with the notice provisions of section 17.50A. These arguments appear to be based on section 17.50A of the 1977 Amendments to the DTPA, which did not become effective until May 23, 1977. This cause was filed May 16, 1977, and therefore arose under the 1973 DTPA, which did not contain 17.50A. We therefore overrule the point. Additionally, on remand, the court should compute damages under the 1973 DTPA, not the 1979 Amendments.

■ Appellants' final argument is that Cherrys Bay Boy was not a "good" within the meaning of Section 17.45(1) of the DTPA. That section defines "goods" as "tangible chattel or real property purchased or leased for use." "Chattel" is defined in *Black's Law Dictionary*, 215 (5th ed. 1979) as "An article of personal property, as opposed to real property. A thing personal and movable. It may refer to animate as well as inanimate property." A horse is a tangible chattel and can be the subject of a deceptive trade practice just as an inanimate object may be.

Reversed and remanded.

---

1. Tex.Rev.Civ.Stat.Ann. § 17.50(b)(1) (Vernon Supp.1980) provides that a consumer may recover "the amount of actual damages found by the trier of fact. In addition, the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000;"