**264**

Cheryl Lualice SPARKMAN, Appellant

v.

PRESLEY OLDS–CADILLAC, INC., and
American Motors Sales Corp.,
Appellees.

No. 16446.

Court of Civil Appeals of Texas,
San Antonio.

Feb. 25, 1981.

Rehearing Denied April 15, 1981.

T. Kellis Dibrell, Dibrell, Dotson, Dibrell & Dibrell, San Antonio, for appellant.

J. G. Adami, Jr., Alice, Kenneth L. Malone, San Antonio, for appellees.

OPINION

CADENA, Chief Justice.

Plaintiff, Cheryl Lualice Sparkman, appeals from an instructed verdict in favor of defendants, Presley Olds-Cadillac, Inc. (Presley), and American Motors Sales Corporation (American Sales), in a case in which plaintiff sought recovery under the Business and Commerce Code (Commerce Code) and the Deceptive Trade Practices Act (DTPA) for damages suffered by her as a result of defects in a 1976 Pacer automobile purchased by her in August, 1976, from Presley, who had purchased the car from American Sales, a distributor of vehicles manufactured by American Motors Corporation (American Motors).

American Motors gave a 12-month/12,000-mile warranty on all 1976 Pacers.

Before the warranty expired plaintiff had several problems with the vehicle, including trouble with the air conditioning, power steering, console, paneling and radio. During the warranty period plaintiff took her car to Presley and to an American Motors dealer in Laredo in connection with her complaints. There is no evidence that the attempts to correct the alleged defects were unsuccessful, and Presley made no charge for the work done by it for work covered by the warranty.

Repair orders from Presley dated January 25, 1977, March 7, 1977, and August 1, 1977, purporting to cover repair work not covered by the warranty, were introduced into evidence. The exhibits which appear in the record are practically illegible, but it is apparent that they include charges for such routine maintenance work as tire balancing.

A serious problem developed in April, 1978, after expiration of the warranty. Ac-

cording to the testimony, the vehicle would "stall out" unexpectedly while being driven. In the spring or early summer of 1978, American Motors, the manufacturer, issued a recall notice on 1976 Pacers in connection with the ignition system. Subsequently, plaintiff took the vehicle to Laurel Motors for performance of the work contemplated by the recall notice. The stalling problem persisted, however and the car was taken to Presley by Mr. Hamilton, plaintiff's stepfather. Attempts to determine the cause of the problem were unsuccessful and Presley was unable to remedy the defect. When Mr. Hamilton last took the automobile to Presley, he discussed the problem with a Presley foreman and a representative of American Motors. The representative of American Motors offered to make another attempt to remedy the problem, but this offer was declined by Mr. Hamilton, who said that he had brought the car "in here" for the last time and that he and his stepdaughter wanted "something else done about it." Mr. Hamilton then drove the automobile away and this suit was subsequently filed. At the time of trial the automobile had been driven more than 30,000 miles.

In her petition plaintiff alleged breach of contract; breach of an implied warranty of merchantability under Tex.Bus. & Comm. Code Ann. § 2.314 (Vernon 1968) and Tex. Bus. & Comm.Code Ann. § 17.50(a)(2) (Vernon Supp.1980); breach of implied warranty of fitness for a particular purpose under sections 2.315 and 17.50(a)(2) of the Commerce Code; and deceptive trade practices under paragraphs (b)(7), (b)(12), and (b)(21) of section 17.46 of the Commerce Code. She alleged she had suffered actual damages in the amount of $5,353.25, which was the purchase price of the automobile.

Defendants' motion for instructed verdict, which was granted by the trial court, was based on the absence of evidence of damages.

Plaintiff's principal contention in this case is that the trial court erred in granting the motion of defendants for instructed verdict because such action was based on the theory that the sole measure of the damages recoverable by her was the difference between the value of the automobile as warranted and the value of the vehicle in the condition in which it was delivered to her. Essentially, her argument is that in a DTPA case the measure of damages is broader than the measure applicable to suits for breach of warranty under sections 2.314 and 2.315 of the Commerce Code, and that in a suit for violation of the DTPA she is entitled to recover the costs of repair, or attempts to repair, the vehicle.

For the purposes of this opinion we consider it unnecessary to determine whether section 17.50(b)(1), which allows the recovery of "actual damages" in a DTPA case, contemplates the recovery of the costs of repair.[1] While we assume that plaintiff's contention is correct, we affirm the judgment below because there was no evidence which would support a recovery under either theory.

### Difference in Market Value

█ The evidence in this case conclusively establishes that plaintiff paid $5,353.25 for the car when she purchased it in August, 1976. There is no evidence concerning the market value of the car, in the defective condition in which it was allegedly delivered to plaintiff, at that time. Nor is there any evidence of probative force concerning the value of the car at the time of trial, even if it be assumed that value at that time would be relevant.

---

1. In support of its contention that the damages recoverable under DTPA are broader than those recoverable under an ordinary breach of warranty obligation, plaintiff relied on section 17.44 of the DTPA; *So Relle v. Western Union Tel. Co.*, 55 Tex. 308, 311 (1881); *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.); *Crawford Chevrolet, Inc. v. McLarty*, 519 S.W.2d 656 (Tex.Civ.App.—Amarillo 1975, no writ); and P. Maxwell, *Damages Under the Deceptive Trade Practices—Consumer Protection Act*, in State Bar of Texas Institute on Damages p. C–2 (Sept.1977). Plaintiff also relies on *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977).

Plaintiff's stepfather, after testifying that he did not have "the slightest idea" of what the value of the car would be, stated that in his opinion the fair market value of the car was $150.00. This witness was not the owner of the car and there is no evidence suggesting that he was qualified to testify concerning value. Plaintiff, the owner of the car, offered no testimony concerning value.

One of defendant's witnesses, Presley, testified that he was in no position to testify as to the fair market value of the car at retail at the time of trial. He did state, "I'd say [the fair market price of the car at the time of trial] would be around twenty-eight, twenty-nine hundred dollars .... That's the average. I have not seen the car in a while." At another point he said, "Wholesale would probably be somewhere around twenty-two, twenty-three hundred, I guess." It is clear, however, that the witness was testifying as to the "average" retail selling price of a three-year-old Pacer, and not as to the value of plaintiff's car at the time of trial. He testified unequivocally that he was in no position to testify as to the value of plaintiff's car. He had last seen plaintiff's car about a year before the trial.

There is no evidence as to the value of the vehicle as represented, unless we assume that the price paid represented the fair market value of the car. There is no evidence as to the value of the car in the condition in which it was delivered. Therefore, there was no evidence to support an award of damages under the "loss of bargain" standard.

### Cost of Repairs

The only testimony relating to cost of repairs was the statement by plaintiff that the cost of repairs was "somewhere in the amount of about, I would say, between eight hundred to a thousand."

There is no evidence that such repairs were necessary or that the cost as to which plaintiff testified was reasonable. In the absence of such testimony, evidence of the price paid is not sufficient to support an award based on cost of repairs. *Bavarian Autohaus, Inc., v. Holland*, 570 S.W.2d 110 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Berryman v. Texas Dept. of Public Safety*, 555 S.W.2d 539, 541–42 (Tex.Civ. App.—Corpus Christi 1977, no writ).

In any event, plaintiff's testimony was as to the cost of repairs from the time she purchased the car until the time of trial. As already pointed out, it appears from the exhibits introduced that some of these repairs were not occasioned by any of the defects which were the basis for plaintiff's suit. That is, the total price paid by plaintiff for repairs clearly included items unrelated to any breach of warranty or misrepresentation by defendants.

It is apparent that even if we accept plaintiff's theory as to the damages recoverable in this case, there must be evidence of either the difference in market value of what was contracted for and what was received, or proof of the reasonable costs of the repairs necessary to remedy the defect. Plaintiff presented no such evidence.

The judgment of the trial court is affirmed.