704 S.W.2d 363 (1985)
VISTA CHEVROLET, INC., Appellant,
v.
Kelly LEWIS, Appellee.
No. 13-84-314-CV.
Court of Appeals of Texas, Corpus Christi.
June 28, 1985.
Rehearing Denied September 5, 1985.
*366 Rick Rogers, Porter, Rogers, Dahlman & Gordon, Corpus Christi, for appellant.
C.M. Henkel, III, Corpus Christi, for appellee.
Before UTTER, KENNEDY, and BISSETT[1], JJ.

OPINION
UTTER, Justice.
This suit involves (1) a claim for revocation of acceptance of an automobile pursuant to TEX.BUS.COMM.CODE ANN. § 2.608 (Vernon Supp.1985) and (2) a claim for damages under the Texas Consumer ProtectionDeceptive Trade Practices Act, TEX.BUS.COMM.CODE ANN. § 17.41 et seq. (Vernon Supp.1985) (DTPA). From a judgment rendered against Vista Chevrolet, Inc., and General Motors Corporation following a jury trial, only Vista Chevrolet appeals. We affirm in part and reverse and remand in part.
On December 24, 1980, Mr. and Mrs. Kelly Lewis purchased from appellant Vista Chevrolet a 1981 Chevrolet Monte Carlo automobile. Although Mrs. Lewis shopped for the automobile and was the intended primary user of the automobile, appellee signed the contract for the automobile, and title to the automobile was placed in appellee's name.[2] The contract reflected a "Deferred Payment Price" of $13,992.80.
On the morning of March 3, 1981, Mrs. Lewis attempted to start her automobile after it had not been used over the weekend. Mrs. Lewis could not start the automobile, had to "jump start" it and drove the automobile to Vista Chevrolet to have it repaired. Subsequently, over a period of approximately sixteen (16) months, Mrs. Lewis continued to experience the "exact same problem" ("it wouldn't start after it sat"), and the automobile was returned to Vista Chevrolet to be repaired for the same problem on a total of ten separate occasions. Work orders pertaining to each occasion noted above were admitted into evidence at trial and indicated the nature of the complaint and the work and/or services performed on each occasion. Mrs. Lewis testified that, in addition to the ten occasions, she experienced the same problem "three or four" times between July and November 1981 and that there were other times when she "wouldn't always take it in" because she "couldn't take it in at the time." Mrs. Lewis testified that, each time the automobile was "picked up" at Vista Chevrolet following alleged repairs, she had been told that the car had been "fixed" except that, when she "picked up" the automobile on May 19, 1982, Phillip Neessen, President of Vista Chevrolet, told her *367 that Vista Chevrolet "could not fix the car." However, at trial, Mr. Neessen denied ever telling Mrs. Lewis or anyone that her car could not be repaired.
Mrs. Lewis testified that, after Neessen told her that the automobile could not be fixed, she contacted her attorney. Consequently, the attorney wrote and sent a demand letter, dated June 21, 1982, to Vista Chevrolet; a copy of the letter was sent to General Motors. Mrs. Lewis stated that, as a result of the letter, on July 19, 1982, "we took the car back to Vista. They wanted us to bring the car back and give them one more chance to fix it." Mrs. Lewis then testified that, after a few days, someone called and told her to "pick it up that afternoon. It would be ready." She testified that, when she picked up the automobile, she was told that it had been "fixed" and "it was ready to be picked up." However, according to Mrs. Lewis, Bobby Ybarra, the repair shop foreman for Vista Chevrolet, later telephoned her and said that "he wanted me to bring the car back in, that it had not been ready to be picked up." Mrs. Lewis refused to return the automobile. She testified that, after she had let it sit over the weekend, the automobile wouldn't start again.
The record shows (1) that, on March 3, 1981 (the date of the first occurrence of the problem), the automobile had been driven approximately 2,498 miles, (2) that, at the time of the alleged revocation of acceptance on June 21, 1982, the automobile had been driven approximately 22,232 miles and (3) that, at the time of trial (beginning February 27, 1984), the automobile had been driven approximately 40,000 miles.
On August 17, 1982, appellee Kelly Lewis filed suit against Vista Chevrolet and General Motors asserting that he had "properly exercised [his] right to revoke acceptance of said vehicle" pursuant to TEX.BUS.COMM.CODE ANN. § 2.608 (Vernon Supp.1985) and alleging certain violations of the DTPA.
The trial court, based upon the jury's findings, rendered judgment on both the revocation of acceptance and the DTPA causes of action in favor of appellee Kelly Lewis against Vista Chevrolet and General Motors.
In its first six points of error, appellant challenges the failure of the trial court to grant its motion for instructed verdict and the sufficiency of the evidence to support appellee's claimed revocation of acceptance of the automobile pursuant to TEX.BUS.COMM.CODE ANN. § 2.608 (Vernon Supp.1985).[3]
The overruling of a motion for instructed verdict will be reviewed on appeal, only if it was recited in a formal order or in the judgment. Since appellant's complaint was not so preserved in the record, it cannot be considered. Superior Trucks, Inc. v. Allen, 664 S.W.2d 136 (Tex.App.Houston [1st Dist.] 1983, writ ref. n.r.e.); Steed v. Bost, 602 S.W.2d 385 (Tex.Civ.App.Austin 1980, no writ).
In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in Glover v. Texas General Indemnity Company, 619 S.W.2d 400 (Tex.1981); Garza v. Alviar, 395 S.W.2d 821 (Tex.1965); Allied Finance Company v. Garza, 626 S.W.2d 120 (Tex.App.Corpus Christi 1981, writ *368 ref'd n.r.e.); CALVERT, No Evidence and Insufficient Evidence Points of Error, 38 Texas L.Rev. 361 (1960).
Appellant asserts that there is no evidence or insufficient evidence in the record to show (1) that the claimed defect or nonconformity of the automobile substantially impaired the value of the automobile to appellee, (2) that the alleged revocation of acceptance occurred before any substantial change in the condition of the automobile not caused by the claimed defect or nonconformity and (3) that the revocation of acceptance occurred within a reasonable time after discovery of the claimed defect or nonconformity. Also, appellant asserts that there was no evidence to show that appellant tendered the value of the benefit received from the use of the automobile at the time of the alleged revocation of acceptance.
Appellant argues that, since Mrs. Lewis had driven the automobile approximately 22,200 miles over approximately a twenty (20) month period before the alleged revocation of acceptance, (1) the claimed defect or nonconformity could not have substantially impaired the value of the automobile to her and (2) the revocation did not occur before any substantial change had occurred in the automobile which was not caused by the claimed defect or nonconformity. The evidence reflects Mrs. Lewis' continued use of the automobile prior to the alleged revocation of acceptance was, at least in part, induced by the repeated representations by Vista Chevrolet that the claimed defect or non-conformity could be and had been cured and that the automobile could be and had been repaired; whereas, the evidence also shows that all of the repeated attempts to repair the problem with the automobile were unsuccessful.
The determination regarding whether the defect or nonconformity substantially impaired the value of the good to the buyer to justify revocation of acceptance is a fact issue for the trier of fact to determine. Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144 (1976); Champion Ford Sales, Inc. v. Levine, 49 Md.App. 547, 433 A.2d 1218 (1981); See Freeman Oldsmobile-Mazda Co. v. Pinson, 580 S.W.2d 112 (Tex.Civ.App.Eastland 1979, writ ref'd. n.r.e.); Don's Marine, Inc. v. Haldeman, 557 S.W.2d 826 (Tex.Civ.App.Corpus Christi 1977, writ ref'd. n.r.e.). Also, the determination regarding whether any substantial change in the condition of the good which is not caused by the claimed defect or nonconformity had occurred before revocation of acceptance is a fact issue for trier of fact. Black v. Don Schmid Motor, Inc., 232 Kan. 458, 657 P.2d 517 (1983); Durfee v. Rod Baxter Imports, Inc., 262 N.W.2d 349 (Minn.1977).
The mere fact that the continued use of a motor vehicle increases the mileage placed on the vehicle does not bar the buyer from revoking his acceptance of the vehicle for substantial impairment of the value of the vehicle to the buyer. Black v. Don Schmid Motor, Inc., 232 Kan. 458, 657 P.2d 517 (1983); Jacobs v. Rosemount Dodge-Winnebago South, 310 N.W.2d 71 (Minn.1981); Hardimon v. Cullum & Maxey Camping Center, Inc., 591 S.W.2d 771 (Tenn.App.1979). Also, the mere fact that the motor vehicle was used extensively does not prevent the jury from concluding that there was a breach of implied warranty of merchantability which substantially impaired the value of the goods to the buyer. Jackson v. H. Frank Oldsmobile, Inc., 65 Ill.App.3d 571, 22 Ill.Dec. 230, 382 N.E.2d 550 (1978).
We hold that, under the facts of this case, there is evidence upon which the jury could have found (1) that the claimed defect or nonconformity substantially impaired the value of the automobile to appellee, especially when that defect or nonconformity remained uncorrected despite the seller's repeated repair attempts and assurances of correction, and (2) that the alleged revocation of acceptance occurred before any substantial change in the condition of the automobile not caused by the claimed defect or non-conformity. Tiger Motor Co. v. McMurtry, 284 Ala. 283, 224 So.2d 638 (1969); Conte v. Dwan Lincoln-Mercury, *369 Inc., 172 Conn. 112, 374 A.2d 144 (1976); Durfee v. Rod Baxter Imports, Inc., 262 N.W.2d 349 (Minn.1977); Welch v. Fitzgerald-Hicks Dodge, Inc., 121 N.H. 358, 430 A.2d 144 (1981).
In reference to the reasonableness of notification requirement for revocation of acceptance, appellant argues that, considering (a) the length of time between the date of purchase and the date of the alleged revocation of acceptance and (b) the length of time during which appellee and Mrs. Lewis knew that the claimed defect or nonconformity existed, "it would seem that the timing of the revocation was anything but reasonable."
It is a question of fact for the trier of fact to determine whether notice of revocation of acceptance was made within a "reasonable time." Diversified Human Resources Group, Inc. v. PB-KBB, Inc., 671 S.W.2d 634 (Tex.App.Houston [1st Dist.] 1984, writ ref'd. n.r.e.); Purnell v. Guaranty Bank, 624 S.W.2d 357 (Tex.App.Dallas 1981, no writ). A delay in making notice of revocation of acceptance of goods is justified where a seller makes repeated assurances that the defect or nonconformity will be cured and attempts to do so. Don's Marine, Inc. v. Haldeman, 557 S.W.2d 826 (Tex.Civ.App.Corpus Christi 1977, writ ref'd. n.r.e.); Gramling v. Baltz, 253 Ark. 352, 485 S.W.2d 183 (1972); Cardwell v. International Housing, Inc., 282 Pa.Super. 498, 423 A.2d 355 (1980). We conclude that, under the facts of this case, the jury could have found that appellee was reasonably justified in delaying his notice of revocation of acceptance of the automobile in view of Vista Chevrolet's repeated assurances that the defect or nonconformity would be cured and its unsuccessful attempts to do so. Consequently, we hold that there is sufficient evidence upon which the jury could have found that appellee notified Vista Chevrolet of its alleged revocation of acceptance within a "reasonable time."
In addition, relying upon cases involving equitable rescission (and not statutory revocation of acceptance), appellant urges that, in order not to have lost his right to revoke acceptance, appellee must have tendered the value of the benefit received at the time of the claimed revocation of acceptance. We note that a tender of the goods by the buyer to the seller is not an essential element of revocation of acceptance under § 2.608. The requirement of a tender of the goods in order to restore the status quo (which is essential to equitable rescission) is inapplicable to statutory revocation of acceptance. It is sufficient that the buyer seasonably notifies the seller of his intention to revoke acceptance. See Snow v. CIT Corp. of South, Inc., 278 Ark. 554, 647 S.W.2d 465 (1983); McCormick v. Ornstein, 119 Ariz. 352, 580 P.2d 1206 (App.1978); Performance Motors, Inc. v. Allen, 280 N.C. 385, 186 S.E.2d 161 (1972); Cardwell v. International Housing, Inc., 282 Pa.Super. 498, 423 A.2d 355 (1980); Campbell v. Pollack, 101 R.I. 223, 221 A.2d 615 (1966); Testo v. Russ Dunmire Oldsmobile, Inc., 16 Wash.App. 39, 554 P.2d 349 (1976). In addition, after revocation of acceptance, the buyer has a security interest in the goods and may retain possession of the goods to secure repayment of any payments that may have been made by the buyer. See Bowen v. Young, 507 S.W.2d 600 (Tex.Civ.App.El Paso 1974, no writ); See also Irrigation Motor & Pump Co. v. Belcher, 29 Colo.App. 343, 483 P.2d 980 (1971). Furthermore, the use of a motor vehicle subsequent to the giving of a notice of revocation of acceptance does not bar the buyer from revoking acceptance when the seller has made repeated unsuccessful attempts to correct a known defect or nonconformity. Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144 (1976).
As reflected in the record, Mrs. Lewis testified at trial that she was willing to pay for her use of the vehicle for "some 40,000 miles" at the rate of "about 20 cents a mile," and other evidence indicated that a tender of the automobile had been discussed between the parties' attorneys at some time prior to trial. Furthermore, the jury in response to Special Issue No. 2 *370 awarded Vista Chevrolet the sum of $4,440 as the sum of money which "would reasonably and fairly compensate defendant for the plaintiff's use and benefit of the automobile."
We hold that, under the above authorities, appellee did not lose its right of revocation of acceptance by his alleged failure to tender the value of the benefit received from his use of the automobile as well as the title to the automobile at the time of the alleged revocation of acceptance. Appellant's first six points of error are overruled.
In its seventh through tenth points of error, appellant asserts that appellee failed to adequately plead and prove his compliance with the written notice requirement of TEX.BUS.COMM.CODE ANN. § 17.50A (Vernon Supp.1985).
On appeal, appellant argues that, because appellee "failed to plead that notice was given and/or that more than thirty (30) days had elapsed before suit was filed" as a prerequisite to his suit under the DTPA, the trial court erred in allowing appellee to proceed on his DTPA claim and in admitting the alleged notice letter (Plaintiff's Exhibit No. 17). As noted by appellant, the record reveals no pleadings by appellee which specifically alleged that the requisite notice was given at least thirty (30) days before appellee filed suit on August 16, 1981. However, at trial, appellant's attorney "candidly" admitted that the alleged notice letter (Plaintiff's Exhibit 17), "dated June 21, 1981, was sent to Vista Chevrolet and it was received and the letter was responded to"; and, appellant never disputed during the course of the trial that it had received the requisite notice. We hold that, despite the absence of pleadings specifically alleging appellee's compliance with the notice requirement of § 17.50A, the trial court did not err (1) in holding that appellee had complied with the notice requirement of § 17.50A, and (2) in allowing appellee to proceed on its DTPA claim.
In addition, appellant argues on appeal that the trial court erred in admitting the alleged notice letter (Plaintiff's Exhibit 17) since the notice letter was legally inadequate because it failed to specify "a dollar amount of damages" for the DTPA claim but only demanded the repayment of "the full purchase price," which appellant alleges was an incorrect measure of damages for appellee's DTPA claim. However, we hold that, despite the alleged incorrect measure of damages, the notice letter sufficiently identified appellee's DTPA claim and the amount appellee required to make him whole, and the letter effectuated the purpose of the notice requirement of § 17.50A. See Barnard v. Mecom, 650 S.W.2d 123 (Tex.App.Corpus Christi 1983, writ ref'd. n.r.e.); See also Jim Walter Homes, Inc. v. Valencia, 679 S.W.2d 29 (Tex.App.Corpus Christi 1984, aff'd.) 690 S.W.2d 239 (Tex.1985). Therefore, we hold that the trial court did not err in admitting the alleged notice letter (Plaintiff's Exhibit No. 17). Appellant's seventh through tenth points of error are overruled.
In its tenth through thirtieth points of error, appellant challenges the sufficiency of the evidence to support certain jury findings relating to its alleged DTPA "laundry list" liability. The jury made the following pertinent findings: (1)(a) Vista Chevrolet represented to appellee that the automobile had characteristics which it did not have and (b) such representation was a producing cause of appellee's damages; (2)(a) Vista Chevrolet represented to appellee that the automobile was of a particular standard of quality when it was of another and (b) such representation of a producing cause of appellee's damages; (3)(a) Vista Chevrolet represented to appellee that its services were of a particular standard of quality when they were of another (b) such representation was a producing cause of appellee's damages, and (c) Vista Chevrolet knowingly made such representation; and, (4)(a) Vista Chevrolet represented to appellee that work or services had been performed on the automobile when the work or services had not been performed, (b) such representation was a producing cause of appellee's damages, and (c) Vista Chevrolet knowingly made such *371 representation. After reviewing the entire record, we hold that the evidence was sufficient to support all of the above jury findings, of which appellant complains.
In its thirty-first through thirty-fourth points of error, appellant challenges the submission of and the jury's finding in response to the DTPA damages issue. The issue that was submitted required the jury to find the difference between the actual cost of the automobile and the value of the automobile actually received by appellee. The jury found the difference to be the amount of $13,992.80.
Appellant first contends that the DTPA damages issue, as submitted, reflected the wrong measure of damages. Appellant asserts that "the proper measure of damages for this matter should be the cost to repair the alleged defects." Actual damages recovered under TEX.BUS.COMM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1985) are those recoverable at common law. Brown v. American Transfer & Storage Co., 601 S.W.2d 931 (Tex.1980); Chrysler Corp. v. Schuenemann, 618 S.W.2d 799 (Tex.Civ.App.Houston [1st Dist.] 1981, writ ref'd. n.r.e.). The correct measure of damages in a case of this nature is the difference between the amount actually paid by the buyer for the automobile and the fair market value of the automobile as delivered in its defective condition. Sobel v. Jenkins, 477 S.W.2d 863 (Tex.1972); Superior Trucks, Inc. v. Allen, 664 S.W.2d 136 (Tex.App.Houston [1st Dist.] 1983, writ ref'd. n.r.e.). Consequently, the issue, as submitted, reflected the proper measure of damages. Appellant's thirty-second point of error is overruled.
Appellant next contends that the evidence was insufficient to support the submission of and the jury's finding in response to the DTPA damages issue because there was no evidence or insufficient evidence of the actual market value of the automobile as received in its defective condition. Appellant suggests that, since the "deferred payment price" for the automobile was $13,992.80 (the amount of damages found by the jury in response to the issue), implicitly the jury found that the actual market value of the automobile as received in its defective condition was "0" or "nothing." Accordingly, appellant argues that "it is inconceivable ... how the vehicle could be totally worthless ("0") when the undisputed evidence showed that the vehicle had been driven some forty-thousand (40,000) miles at the time of trial... If the vehicle was being used it had some value even if it was for simple salvage."
The record shows that the "deferred payment price" for the automobile was $13,992.80. Over appellant's objection that Mrs. Lewis had not been "shown as a qualified witness to testify as to value," Mrs. Lewis testified that "the value of it hindsight knowing that it's defective" was "nothing." She also testified that the automobile was worth "nothing" or was "really worthless" or was "really worth zero" because she couldn't depend on it and she couldn't sell it. There is nothing in the record to indicate (1) that Mrs. Lewis was familiar with the actual market value of her automobile in its defective condition or other similar automobiles or (2) that Mrs. Lewis' valuation referred to anything other than the intrinsic value of the automobile to her. Appellant Vista Chevrolet and General Motors presented no expert testimony regarding the actual market value of the automobile.
Quoting Bavarian Autohaus, Inc. v. Holland, 570 S.W.2d 110 (Tex.Civ.App.Houston [1st Dist.] 1978, no writ), the Houston (1st Dist.) Court of Appeals in Superior Trucks, Inc. v. Allen, 664 S.W.2d 136 (Tex.App.Houston [1st Dist.] 1983, writ ref'd. n.r.e.), wrote:
"When the owner of goods seeks to testify to their value, as distinguished from their value to him, the Texas rule is that he must show that he is qualified to do so; he is prima facie qualified to state it if he declares he knows the market value. 37 A.L.R.2d 998, citing many cases. Id. (Emphasis supplied)."
*372 Superior Trucks, Inc. v. Allen, 664 S.W.2d at 147. See also Porras v. Craig, 675 S.W.2d 503 (Tex.1984).
After reviewing the entire record, we hold (1) that it was never shown that Mrs. Lewis was qualified to testify regarding the value of her automobile and (2) that there was no evidence regarding the actual market value of the automobile as received in its defective condition to support the submission of and the jury's finding in response to the DTPA damages issue. Sparkman v. Presley Oldsmobile-Cadillac, Inc., 616 S.W.2d 264 (Tex.Civ.App.San Antonio 1981, writ ref'd. n.r.e.); Schlotz v. Sigel, 601 S.W.2d 516 (Tex.Civ.App.Dallas 1980, no writ). Appellant's thirty-first, thirty-third and thirty-fourth points of error are sustained.
In its thirty-fifth through thirty-seventh points of error, appellant challenges the submission of and the jury's finding in response to Special Issue No. 33, which inquired regarding whether appellee "should have returned to them" the amount of money which appellee paid for the automobile.
We find no reversible error in the submission of or the jury's finding in response to the Special Issue No. 33. The issue is not a controlling issue, See TEX.R.CIV.P. 279, and it is cumulative of the special issues relating to appellee's claim of revocation of acceptance and the special issues relating to appellee's DTPA claim because the return of purchase money is a remedy permitted (1) by TEX.BUS.COMM.CODE ANN. § 2.711 (Vernon Supp.1985) to a consumer who justifiably revokes acceptance and (2) by TEX.BUS.COMM.CODE ANN. § 17.50(b)(1) to a consumer who prevails upon a DTPA claim. Appellant's thirty-fifth through thirty-seventh points of error are overruled.
In its thirty-eighth point of error, appellant asserts that the trial court erred in failing to grant appellant's challenge for cause to a certain prospective juror, Mr. Michael B. Carlucci. During his individual voir dire examination, Mr. Carlucci stated that he experienced "some warranty problems" with "a new vehicle" that he had bought in December 1981 and that he was required to take the vehicle back to the dealership several times for repairs. He also stated that the experience "really upset" him and that his experience would affect his ability to be a fair and impartial juror in this case. However, when asked regarding his ability to exclude his past experience and to answer the special issues based upon the evidence heard at trial, Mr. Carlucci responded "It's hard to say. I could do my best." Appellant properly preserved his complaint under Hallett v. Houston Northwest Medical Center, 689 S.W.2d 888 (Tex.1985).
We note that Mr. Carlucci did not express absolute bias or prejudice against appellant and, furthermore, that Mr. Carlucci was the only juror out of the twelve member jury who did not sign the verdict. Since we do not have before us any affidavits of other jurors establishing what impact, if any, Mr. Carlucci's participation in the jury deliberations had upon the verdict of the remaining eleven members of the jury, we hold that appellant has failed to show that any harm resulted from the trial court's failure to grant the challenge for cause against Mr. Carlucci. TEX.R.CIV.P. 434. Appellant's thirty-eighth point of error is overruled.
In its thirty-ninth point of error, appellant asserts that the trial court erred in submitting Special Issue No. 36 for the reason that appellee failed to timely request the submission of the issue. The record reflects that, approximately halfway through the trial court's reading of the charge to the jury, the trial court noticed the lack of the phrase "preponderance of the evidence" in several special issues. The trial court interrupted its reading of the charge at that time and requested that the parties' attorneys approach the bench. During the trial court's interruption of the reading of the charge to the jury, appellee moved to include Special Issue No. 36 in the part of the court's charge yet to be read. After some discussion, the trial court granted appellee's motion to include *373 the issue over the objection of both appellant Vista Chevrolet and General Motors and allowed the charge to be amended by the addition of the issue.
On appeal, appellant argues that, since appellee did not timely request Special Issue No. 36 and made no objection to the exclusion of the issue before the trial court began to read the charge to the jury, the issue should have not been submitted to the jury as part of the court's charge. We hold that the alleged error, if any, was harmless because the trial court's interruption of the reading of the charge cannot be construed as any comment on the weight of the evidence and because the special issue to be added to the court's charge had not been reached at the time the trial court interrupted its reading of the court's charge to the jury. TEX.R.CIV.P. 434; See TEX.R.CIV.P. 272-279. Appellant's thirty-ninth point of error is overruled.
Lastly, appellant in its supplemental point of error in its reply brief asserts that, on appeal, it is entitled to a credit for the amount of General Motors' post-trial settlement of the claims asserted against it by appellee. However, based upon the principles of joint and several liability and based upon the fact that General Motors is not before us on appeal, we refuse to order such a credit. Appellant's supplemental point of error is overruled.
Since we have sustained appellant's thirty-first, thirty-third and thirty-fourth points of error and since appellee's DTPA claim and his claim for revocation of acceptance are severable causes of action, we REVERSE the portion of the trial court's judgment relating to the DTPA claim and REMAND said portion to the trial court for redetermination of DTPA damages; however, we AFFIRM the portion of the trial court's judgment relating to appellee's claim for revocation of acceptance. See Whirlpool Corp. v. Texical, Inc., 649 S.W.2d 55 (Tex.App.Corpus Christi 1982, no writ). Costs of appeal are to be assessed equally between the parties.
NOTES
[1] Associate Justice (Ret.), Court of Appeals, Thirteenth Supreme Judicial District, sitting by designation. See TEX.REV.CIV.STAT.ANN. art. 1812 (Vernon Supp.1985).
[2] Appellee Kelly Lewis (and not his wife, Cindy Lewis) was the only named-buyer on the contract for the automobile and the only named-plaintiff in this suit. However, it is undisputed that, at all pertinent times, Kelly and Cindy Lewis were married to each other, and there is nothing in the record to indicate that the automobile purchased was other than the Lewis' community property. As noted by both parties, Kelly Lewis did not testify, but Mrs. Lewis did testify at trial. However, contrary to appellant's assertions, we hold that Mrs. Lewis was competent to testify regarding the transactions in question.
[3] TEX.BUS.COMM.CODE ANN. § 2.608 (Vernon Supp.1985) provides:

§ 2.608. Revocation of Acceptance in Whole or in Part
(a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.