**FORD MOTOR COMPANY and Crane Lincoln–Mercury, Inc., Appellants,**

v.

**John T. COOPER, Appellee.**

No. 06–03–00009–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 18, 2003.

Decided Jan. 8, 2004.

Craig M. Patrick and Eric L. Lindstrom, Craddock, Reneker & Davis, LLP, Dallas, for appellant.

Clarice Attaway Allen, Attorney At Law, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

John T. Cooper purchased a new 1998 Lincoln Town Car from Crane Lincoln Mercury, Inc., an authorized dealer for Ford Motor Company, in Texarkana. After experiencing a steering problem with the vehicle, he sued Crane and Ford for alleged violations of the Texas Deceptive Trade Practices Act (DTPA)[1] and for breach of warranty. The jury found Crane and Ford did engage in deceptive trade practices and failed to comply with the warranty, and awarded Cooper $5,000.00 for diminished value of the vehicle and $1,000.00 for expenses. The jury also awarded Cooper additional damages of $44,000.00 against Crane and $22,000.00 against Ford for knowingly engaging in such conduct. The trial court reduced the award and rendered judgment against Crane and Ford for a total of $18,000.00.[2] Ford and Crane appeal, contending the evidence was legally insufficient to support the jury's award of actual damages. We agree and reverse the judgment, but in the interests of justice remand the case for a new trial.

### Background

Cooper purchased the automobile in question August 29, 1998, for $33,150.00. He testified he decided to buy a Lincoln Town Car because of its dependability and ease of driving during long trips. When

---

1. Tex. Bus. & Com.Code Ann. § 17.46(b)(5), (7), (12), (13), (19), (22) (Vernon Supp.2004).

2. "If the trier of fact finds that the conduct of the defendant was committed knowingly, ... the trier of fact may award not more than three times the amount of economic damages; ...." Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 2002).

he test drove the car, Cooper discovered it "had a pull on the steering wheel." He discussed the problem with Crane's salesman, who assured him that the car needed an alignment and that it would be repaired before Cooper purchased the vehicle. Cooper testified that, when he took possession August 29, he was assured by the salesman the car had been repaired. He discovered, however, the problem had not been corrected to his satisfaction—that the car drifted to the right at high speeds and to the left at low speeds. He testified pressure had to be applied to the steering wheel in order to keep the vehicle on the road.

Cooper returned the vehicle to Crane on numerous occasions for the dealership to correct the problem. Crane had the vehicle realigned under the warranty each time, but Cooper testified the problem persisted. Cooper took the vehicle to several independent repair shops for evaluations. He testified Craig Cummins, of Superior Spring and Brake in Conway, Arkansas, found the car dangerous to drive long distances.[3] Cooper also testified Dale Clark, of Cooper Tire and Supply[4] in Texarkana, told him the car was dangerous. After the vehicle had been driven approximately 1,000 miles, Cooper decided to park it and cease using it. Cooper testified that he felt the car was dangerous to drive on the highway and that the car should go back to the manufacturer.

Regarding the value of the car and the expenses he incurred in having the car evaluated, Cooper testified as follows:

Q. Now, you've already told the jury about how much you paid for the car [$33,150.00]. Did you incur some expenses trying to get it evaluated and get this information to Crane so they would talk to you and solve the problem?

A. Yes, I did.

Q. And are you asking the jury to make a finding that you're entitled to—based on the action that you've testified to here today, that you're entitled to have your money refunded?

A. Yes, I am. I can't use the car.

Q. Where is the car now?

A. The car's at my house ... in the garage.

Q. And why have you not driven that car?

A. It is unsafe for what I want it for, long distance travel, it's fatiguing. And so we bought [another] car to be able to make long trips, . . . .

. . . .

Q. Mr. Cooper, I believe you've said that the car is parked in the garage because you feel it's unsafe to drive it. Just tell me what value would you place on that car.

---

**3.** This appeal is based on a partial reporter's record. Cummins and several other witnesses apparently testified at trial, but their testimony was not requested to be included in the record by either party. Under Tex.R.App. P. 34.6(c)(1), "[i]f the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues." The appellee "may designate additional exhibits and portions of the testimony to be included in the reporter's record." Tex.R.App. P. 34.6(c)(2). This Court "must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues." Tex.R.App. P. 34.6(c)(4). This Court must presume that the partial record in this case constitutes the entire record, even though "the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence. . . ." *Id.*

**4.** Clark used the name "Cooper Tire and Supply" in his testimony; the correct name of the business is "Cooper Service."

A. Nothing. It's absolutely worthless to me for what I bought it for.

Joe Crane, co-owner of the dealership, testified there was an alignment concern with the car, but that it could be repaired. He testified that he sold the car for $33,150.00 and that the value of the car was not diminished because of the alignment problem.

**Jury Findings**

In answer to the questions submitted in the court's charge, the jury found: 1) Crane and Ford engaged in one or more false, misleading, or deceptive acts or practices that were a producing cause of actual damages to Cooper; 2) Crane and Ford failed to comply with a warranty, and said failure was a producing cause of damages to Cooper; 3) $5,000.00 would fairly and reasonably compensate Cooper for the difference between the fair market value of the car in the condition in which it was sold to him and the value it would have had if it had been as warranted and represented, and $1,000.00 would fairly and reasonably compensate him for his expenses; 4) Crane's and Ford's conduct found in 1) or 2) above was committed knowingly; and 5) $44,000.00 should be assessed against Crane and $22,000.00 against Ford as additional damages.

**Standard of Review**

In determining a no-evidence issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002).

**Fair Market Value**

The Legislature's stated public policy in enacting the DTPA was to "protect consumers against false, misleading, and deceptive business practices, ... [and] unconscionable actions, . . . ." TEX. BUS. & COM. CODE ANN. § 17.44(a) (Vernon 2002); *see Latham v. Castillo,* 972 S.W.2d 66, 68 (Tex.1998). The Act "shall be liberally construed and applied" to promote that underlying purpose. TEX. BUS. & COM.CODE ANN. § 17.44(a); *Latham,* 972 S.W.2d at 68. Under the Act, "each consumer who prevails may obtain ... the amount of economic damages found by the trier of fact." TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon 2002). "Economic damages" are defined as "compensatory damages for pecuniary loss, including costs of repair and replacement." TEX. BUS. & COM.CODE ANN. § 17.45(11) (Vernon 2002).

■ In cases involving misrepresentation, plaintiffs may recover under either the "out of pocket" measure of damages or the "benefit of the bargain" measure of damages, whichever gives the plaintiff the greater recovery. *Leyendecker & Assocs. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984). The "out of pocket" measure is the difference between the value of what the plaintiff parted with and the value of what he or she received. *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988). The "benefit of the bargain" measure of

damages is the difference between the value as represented and the actual value received. *Leyendecker & Assocs.*, 683 S.W.2d at 373. The measure of damages pled by Cooper was the difference between the fair market value of the car in the condition in which it was sold to him and the value it would have had if it had been as warranted and represented. This was the measure of damages the jury was instructed to use in assessing Cooper's economic damages (not including expenses).

■ Both Cooper and Crane testified they negotiated a price of $33,150.00 for the vehicle. The price agreed on between two parties is sufficient evidence to support a fact finding on market value in an action under the DTPA. *See Chrysler Corp. v. Schuenemann*, 618 S.W.2d 799, 805 (Tex.Civ.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.); *see also Jack Roach Ford v. De Urdanavia*, 659 S.W.2d 725, 728–29 (Tex.App.-Houston [14th Dist.] 1983, no writ). There was, therefore, evidence of the market value of the vehicle as warranted and represented.

Crane and Ford claim the judgment cannot stand, however, because no evidence of damages was offered as to the actual market value of the vehicle in its alleged defective condition. They contend Cooper's only attempt at proving such value was his own opinion, which was legally insufficient because: 1) his opinion referred to the vehicle's personal value to him, not its market value; and 2) his opinion did not refer to the value of the vehicle in its alleged defective condition at the time of purchase.

Crane and Ford rely on *Porras v. Craig*, 675 S.W.2d 503 (Tex.1984); *Lester Goodson Pontiac v. Elliott*, 775 S.W.2d 395 (Tex.App.-Houston [1st Dist.] 1989, writ denied); and *Vista Chevrolet, Inc. v. Lewis*, 704 S.W.2d 363 (Tex.App.-Corpus Christi 1985), *aff'd in part & rev'd in part*,

709 S.W.2d 176 (Tex.1986), for their position that Cooper's testimony referred to the personal intrinsic value the vehicle had to him, and was no evidence of its actual market value.

■ It is a longstanding rule that an owner of property can testify as to its market value even though such owner cannot qualify to testify about the value of like property belonging to someone else. However, as the Texas Supreme Court explained in *Porras*, an owner's testimony in this regard is not without restrictions:

> In order for a property owner to qualify as a witness to the damages to his property, his testimony must show that it refers to market, rather than intrinsic or some other value of the property. This requirement is usually met by asking the witness if he is familiar with the market value of his property.

*Porras*, 675 S.W.2d at 504–05.

■ Market value is defined as the price property would bring when offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity to buy. *See Waste Disposal Ctr., Inc. v. Larson*, 74 S.W.3d 578, 583 (Tex.App.-Corpus Christi 2002, pet. denied). Intrinsic value, on the other hand, is an inherent value not established by market forces; it is a personal or sentimental value. *Star Houston, Inc. v. Kundak*, 843 S.W.2d 294, 298 (Tex.App.-Houston [14th Dist.] 1992, no writ).

In *Porras*, Craig, the plaintiff landowner, sued his neighboring landowner, Porras, for damages from Porras' clearing and removal of trees on Craig's side of the fence line. Craig's expert testified that in his opinion the value of the land in question was in fact enhanced from Porras' clearing. *Porras*, 675 S.W.2d at 505. Craig testified the diminution in value to

his land from the clearing was $20,000.00. *Id.* He reasoned as follows:

> Well I bought this land to build a retirement home on and I am fifty-seven and my wife is fifty-six and she's not—she's crippled so she wants to get out in the country, too. And we bought that for that reason and now we are afraid to build out there. And the reason we're afraid is because of the exotic animals that will be put next to us. Also they patrol the fence with guns. A sign on their fence [sic] they'll shoot if you go across that fence. And about a month ago there was a fire started on the grass on my property and burned in under my trees and if my wife had been there by herself she couldn't have got away.

*Id.*

Based on the jury's findings, the trial court awarded Craig $7,000.00 in actual damages and $50,000.00 in exemplary damages against Porras. *Id.* at 504. Porras appealed and contended there was no evidence to support the award of actual damages to the land. *Id.* The Texas Supreme Court agreed and found this was not just a case in which the lawyer failed to ask his client if he was familiar with the market value of the property. *Id.* at 505.[5] Instead, the owner's testimony affirmatively showed he referred to personal rather than market value. *Id.* (*citing Stinson v. Cravens, Dargan & Co.,* 579 S.W.2d 298, 299 (Tex.Civ.App.-Dallas 1979, no writ)).

■ In the instant case, Cooper, like Craig in *Porras,* did not state he was familiar with the market value of his property. Further, Cooper testified he regard-

ed the vehicle as worthless for the purpose for which he bought it: driving long trips. His testimony, like Craig's, affirmatively referred to the value of the property to him for his uses and purposes, and did not reference the market value of the property in any respect.

*Lewis* and *Elliott* likewise held that testimony which affirmatively shows the owner is testifying to personal value, not market value, is no evidence as to the actual market value of a vehicle. In *Lewis,* 704 S.W.2d at 366, Mr. and Mrs. Lewis purchased a new automobile from Vista Chevrolet for $13,992.80. Thereafter, the car would not start after it had sat for a short period and required a "jump start." *Id.* Mrs. Lewis took the vehicle back to Vista Chevrolet on several occasions to have the problem repaired, but the problem persisted. *Id.* at 366–67. Suit was subsequently filed against Vista Chevrolet on a claim for revocation of acceptance and for damages under the DTPA. *Id.* at 367. At the time of trial, the vehicle had been driven approximately 40,000 miles. *Id.* Mrs. Lewis testified that "the value of [the vehicle in] hindsight knowing that it's defective" was "nothing." *Id.* at 371. She also testified the vehicle was worth "nothing" or was "really worthless" because she could not depend on it and she could not sell it. *Id.* The jury awarded plaintiff $13,992.80, the entire purchase price of the vehicle, as damages under the DTPA claim as the difference between the actual cost of the automobile and the value of the automobile received. *Id.* The appellant argued "it is inconceivable ... how the vehicle could be totally worthless ("0") when the undisput-

---

**5.** The court is referencing a series of cases that found "[w]hen the owner of goods seeks to testify to their value, *as distinguished from their value to him,* the Texas rule is that he must show that he is qualified to do so; he is prima facie qualified to state it if he declares he knows the market value." *Superior* Trucks, Inc. v. Allen, 664 S.W.2d 136, 147 (Tex.App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.) (citing *Bavarian Autohaus, Inc. v. Holland,* 570 S.W.2d 110 (Tex.Civ.App.-Houston [1st Dist.] 1978, no writ)). Cooper did not state he knew the market value of the Lincoln Town Car.

ed evidence showed that the vehicle had been driven some forty-thousand (40,000) miles at the time of trial . . . If the vehicle was being used it had some value even if it was for simple salvage." *Id.*

The court found there was nothing in the record to suggest that Mrs. Lewis' "valuation referred to anything other than the intrinsic value of the automobile to her." *Id.* The court found Mrs. Lewis' testimony was no evidence regarding the actual market value of the automobile as received in its defective condition, and the court found no other evidence to support the submission of and the jury's finding on the DTPA damages issue. *Id.* at 372.

In *Elliott,* 775 S.W.2d at 397, Elliott purchased what she thought was a new GMC Suburban. She later discovered the vehicle had been purchased before and returned to the dealership because of engine problems. *Id.* The dealership repaired the engine, but did not disclose to Elliott the prior purchase or the engine repairs. *Id.* Elliott testified the value of the vehicle at delivery was "zero in light of the fact that [there was] prior ownership and prior damage to the vehicle," and "[i]t would not be worth a cent to me." *Id.* at 399. In addition, her husband testified that, "[a]s owner of the vehicle I would believe it has no value." *Id.* Elliott's expert testified the market value of the vehicle at delivery would have been either $2,500.00 or twenty-five percent less than its original sticker price, because the prior delivery made it a used vehicle. *Id.* at 398. The trial court awarded Elliott the full price of the Suburban as her actual damages on her DTPA claim against the dealership. *Id.*

The Houston Court of Appeals reversed and remanded for a new trial. *Id.* at 401. The court found the testimony of Elliott and her husband was not probative as a matter of law because nothing in the rec-

ord indicated they were familiar with the actual market value of the vehicle in its defective condition or that their valuation referred to anything other than the intrinsic value of the automobile to them. *Id.* at 399. The court found no evidence to support a finding the vehicle was worthless, but found the expert's testimony was probative on the diminished market value of the vehicle. *Id.* at 400. The court, therefore, overruled the no-evidence point of error, but sustained the insufficiency point because the evidence was factually insufficient to support the award of the full price of the vehicle as actual damages. *Id.*

Cooper cites *Fid. & Cas. Co. v. Underwood,* 791 S.W.2d 635 (Tex.App.-Dallas 1990, no writ), *overruled in part, Am. Mfrs. Mut. Ins. Co. v. Schaefer,* No. 02–0295, 124 S.W.3d 154, 2003 WL 22417186, 2003 Tex. LEXIS 472 (Tex. Oct. 17, 2003), for his position that, because he had conferred with several mechanics who told him the vehicle was defective and dangerous to drive, his testimony had some probative value on the issue of the vehicle's market value.

In *Underwood,* 791 S.W.2d at 638, Underwood purchased a new GMC pickup for approximately $11,000.00. Shortly thereafter, the truck was stolen, abandoned, and found with its front end submerged in a lake. *Id.* Underwood's insurance carrier, Fidelity & Casualty Company, tendered $3,509.08 as complete satisfaction for the truck's repair and refused to communicate further with Underwood or his attorney. *Id.* at 638–39. Underwood filed suit alleging contract issues and violations of the DTPA and the Insurance Code. *Id.* at 639. The jury found in favor of Underwood on all issues and awarded him $64,887.00. *Id.* On appeal, Fidelity contended there was no evidence of the market value of Underwood's vehicle immediately after the loss. *Id.* at 641. Underwood's expert, the own-

er of a car dealership, testified flood-damaged vehicles generally depreciate about sixty-six percent. *Id.* He testified that General Motors would not retail a flood-damaged vehicle because of potential later liability, but that such vehicles have some value if sold through a salvage pool. *Id.* at 642. Underwood testified that, on the basis of what he had learned about flood-damaged vehicles, his vehicle had no value. He testified as follows:

Q   Okay. As a result of the occurrences in this lawsuit, *have you undertaken to learn from anyone what the consequences of flood damage are to a vehicle?*

. . . .

A   *Yes.*

Q   And in response to the information you have heard, what has been your decision on that matter?

A   That I don't want one.

Q   Under any circumstances, would you want a flood damaged vehicle?

A   No.

Q   Are you aware of any laws that deal with the permanent notation on title of a flood damaged vehicle?

A   I've been told they have to be stamped as a flood damaged vehicle.

Q   Okay. And have you ever attempted to buy or sell a flood damaged vehicle?

A   No.

. . . .

Q   Dr. Underwood, would you tell the jury the actual cash value of this truck to you on the day that the vehicle was stolen, before it was stolen.

A   Actual cash value?

Q   Yes.

A   Probably around $10,500.

Q   *And will you tell the jury the actual cash value of this vehicle to you after the flood damage occurred?*

A   *Nothing, 0.*

*Id.* at 641.

The Dallas Court of Appeals held that Underwood's testimony showed he was testifying to matters within his knowledge and that the testimony had some probative value on the issue of market value. *Id.* at 642 (citing *River Oaks Townhomes Owners' Ass'n, Inc. v. Bunt,* 712 S.W.2d 529, 533 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett,* 698 S.W.2d 271, 275–76 (Tex.App.-Fort Worth 1985, no writ); *Tom Benson Chevrolet, Inc. v. Alvarado,* 636 S.W.2d 815, 823 (Tex.App.-San Antonio 1982, writ ref'd n.r.e.)). The court therefore found Underwood's testimony provided some evidence of the market value of the vehicle in its defective condition.

In *Underwood,* the owner testified that, from his experiences in dealing with his flood-damaged car, and the information he learned in the marketplace as to its value, the vehicle was worthless. In contrast, the substance of Cooper's testimony, like those of the owners in *Porras, Lewis,* and *Elliott,* affirmatively revealed that the basis of his opinion was the intrinsic or personal value of the automobile to him. The evidence showed Cooper took the vehicle to various mechanics, who regarded the vehicle as unsafe for long trips. There was no evidence as to how that affected the market value of the vehicle.

We, like the Texas Supreme Court in *Porras,* "should not be understood as retreating from the general rule that an owner is qualified to testify about the market value of his property." *Porras,* 675 S.W.2d at 505. And we, like the court in *Underwood,* do not consider that an owner's use of the words "to me," in stating his or her opinion concerning the value of his or her own property, automatically expresses intrinsic, rather than market, value so long as the record affirmatively

shows, as it did in *Underwood,* that such opinion is based on market forces. Even the specific words "market value" are not necessary as long as the record is clear the opinion expressed is based on market forces, not solely on intrinsic or personal value.

A review of Cooper's testimony reveals that his valuation of the vehicle was based on the personal value of the vehicle to him. His testimony was he purchased a Lincoln Town Car because of its attributes for comfort, safety, and ease of driving. He testified the main purpose for buying the vehicle was to make long trips to Dallas and Alabama. He did not, however, regard the vehicle as dangerous for "running errands ... in town." He did regard the vehicle as "unsafe for what I want it for, long distance travel.... And so we bought the other car to be able to make long trips, ...." He testified the value of the vehicle was "[n]othing," or "absolutely worthless to me for what I bought it for." The basis of his valuation was the vehicle's personal value to him, not the price the vehicle would bring on the market. The Texas Supreme Court in *Porras* found that such opinion testimony, which affirmatively shows the owner is referring to personal, not market, value, is no evidence. For those reasons, Cooper's testimony is no evidence regarding the market value of the automobile as received in its defective condition to support the submission of, and the jury's finding in response to, the DTPA damages issue.

■ There was substantial evidence the vehicle was in a defective condition when Cooper purchased it. Both Cooper and Joe Crane testified regarding the steering problem. However, there was no evidence of a reduction in market value. The only evidence of the value of the car in its defective condition was Joe Crane's testimony that the value of the vehicle had not diminished because of the alignment concern. The burden is on the plaintiff to establish its damages with reasonable certainty to enable a jury to compute them. *Oryx Energy Co. v. Shelton,* 942 S.W.2d 637, 642 (Tex.App.-Tyler 1996, no writ); *see also Goose Creek Consol. Ind. Sch. Dist. v. Jarrar's Plumbing, Inc.,* 74 S.W.3d 486, 496–97 (Tex.App.-Texarkana 2002, pet. denied) (finding owner of property may only recover for such loss of use from trespass to land if reasonable value of use can be established with fair certainty).

There is no evidence of the diminished value of the vehicle in its alleged defective condition. Therefore, the jury's verdict of $5,000.00 diminished value has no support in the record, and Crane and Ford's no-evidence challenge is sustained. We find it unnecessary to address Crane and Ford's remaining challenge that Cooper's testimony referred to value at time of trial, not time of purchase.

**Expenses**

■ Crane and Ford also contend there was no evidence to support the jury's verdict on the expenses Cooper incurred. Under the DTPA, economic loss is determined by the total loss sustained by the consumer as a result of the deceptive trade practice. *Kish v. Van Note,* 692 S.W.2d 463, 466 (Tex.1985). This standard envisions compensating plaintiffs for "the total loss ... includ[ing] related and reasonably necessary expenses." *Henry S. Miller Co. v. Bynum,* 836 S.W.2d 160, 162 (Tex.1992). Cooper testified to the various evaluations he obtained from independent mechanics, but did not testify to any amount of expense he incurred. The only offer made of the amount of expense Cooper incurred was as follows:

Q. Now, in getting all of the different independents to look at things, and I believe we had some—you had to buy your own tags and they didn't even tag

it for you, even though they charged you for it, how much—Have you spent about $1,100.00 in trying to get all of this done?

[Defense Counsel]: Objection to leading.

THE COURT: Sustained,....

The trial court properly sustained the objection, and no other evidence on the amount of expenses Cooper incurred was offered. As noted above, the burden is on the plaintiff to establish his or her damages with reasonable certainty to enable a jury to compute them. *Shelton,* 942 S.W.2d at 642; *see also Jarrar's Plumbing, Inc.,* 74 S.W.3d at 496–97. There was no evidence admitted to enable the jury to compute any expenses Cooper incurred. The jury's verdict of $1,000.00 for expenses, therefore, has no support in the record, and Crane and Ford's no-evidence challenge is sustained.

### Additional Damages

As there was no evidence of economic damages, additional damages cannot be awarded. TEX. BUS. & COM.CODE ANN. § 17.50(b)(1); *see Nabours v. Longview Sav. & Loan Ass'n,* 700 S.W.2d 901, 903 (Tex.1985) (exemplary or punitive damages may not be recovered in absence of award of actual damages).

### Disposition

■ Crane and Ford request that we reverse the judgment of the trial court and render judgment that Cooper take nothing. The general rule is, where an appellate court finds the evidence legally insufficient to support a damages verdict, the court should reverse and render a take-nothing judgment as to that amount. *Larson v. Cactus Util. Co.,* 730 S.W.2d 640,

641 (Tex.1987); *Nat'l Life & Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex. 1969) (when appellate court sustains "no-evidence" point, it is generally court's duty to render judgment for appellant); *see also Lewis,* 709 S.W.2d at 176 (finding duty to render take-nothing judgment when appellant's "no-evidence" point is sustained is basic rule of law).

■ Under certain circumstances, however, an appellate court may reverse and remand a case for a new trial in the interests of justice. TEX.R.APP. P. 43.3 provides, "[w]hen reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial." Appellate courts have broad discretion to exercise that power. *Fanning v. Fanning,* 847 S.W.2d 225, 226 (Tex.1993); *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966).

Appellate courts have reversed for a new trial where, among other circumstances,[6] the plaintiff failed to show damages with reasonable certainty, but the interests of justice required the plaintiff be given an opportunity to show the proper measure of his or her damages. *Porras,* 675 S.W.2d at 506; *Varel Mfg. Co. v. Acetylene Oxygen Co.,* 990 S.W.2d 486, 500 (Tex.App.-Corpus Christi 1999, no pet.); *Williams v. Gaines,* 943 S.W.2d 185, 193 (Tex.App.-Amarillo 1997, writ denied); *A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.,* 798 S.W.2d 606, 616 (Tex. App.-Dallas 1990, writ denied); *Powell–Buick–Pontiac GMC, Inc. v. Bowers,* 718

---

6. *See In re Doe 2,* 19 S.W.3d 278, 283–84 (Tex.2000); *Twyman v. Twyman,* 855 S.W.2d 619, 626 (Tex.1993); *Boyles v. Kerr,* 855 S.W.2d 593, 603 (Tex.1993); *Westgate, Ltd. v.* *State,* 843 S.W.2d 448, 455 (Tex.1992); *L.M.B. Corp. v. Gurecky,* 501 S.W.2d 300, 303 (Tex.1973).

S.W.2d 12, 14 (Tex.App.-Tyler 1986, writ ref'd n.r.e.).

In *Williams*, 943 S.W.2d at 193, the Amarillo Court of Appeals found no evidence was presented that met the definition of fair market value in the jury's instructions. The court, however, remanded the matter for a new trial. As relevant interests of justice, the court cited the jury's findings that the plaintiff and defendant had an agreement, that the defendant breached the agreement, and that the plaintiff sustained some loss as a result. *Id.; see also A.B.F. Freight Sys., Inc.,* 798 S.W.2d at 616 (finding that, although plaintiff did not prove its damages with reasonable certainty, there was some evidence which showed damages generally, and interests of justice, therefore, required remand for new trial); *Bowers,* 718 S.W.2d at 14 (although finding no evidence to support jury's findings on plaintiff's DTPA claim, record demonstrated plaintiff did sustain some damages, and cause was therefore remanded for new trial in interests of justice).

 We find similar interests of justice here. The jury found Crane and Ford engaged in one or more false, misleading, or deceptive acts or practices that were a producing cause of actual damages to Cooper, that they failed to comply with a warranty that was a producing cause of damages to Cooper, and that such conduct by Crane and Ford, in one or both instances, was committed knowingly. Under these circumstances, we find the interests of justice require a remand for another trial.[7]

7. Because the damages are unliquidated and liability is contested, the remand is on the entire cause as to both liability and damages. Tex.R.App. P. 44.1(b); *see Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996); *Otis Elevator Co. v. Bedre,* 776 S.W.2d 152, 153 (Tex.1989).

We reverse the judgment and remand for a new trial.