COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-136-CV
  
  
BARRY 
KAGAN                                                                     APPELLANT
  
V.
  
R. 
GRANT MCCRANIE AND                                                     APPELLEES
JIM 
MCCRANIE
  
  
------------
 
FROM 
COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellees 
Grant and Jim McCranie sued Appellant Barry Kagan for misrepresentations under 
the DTPA and for common-law fraud, negligence, and gross negligence after Grant 
McCranie purchased a 1979 Porsche automobile from Kagan for his son, Jim, as a 
high school graduation present. The Porsche was a highly modified 
“performance” vehicle, containing an nonfactory engine, nonfactory 
suspension components, nonfactory transmission components, nonfactory seats, and 
numerous other modifications. Following a bench trial, the trial court entered a 
judgment for Grant McCranie and made findings of fact and conclusions of law. In 
its only finding of fact regarding damages, the trial court found that Grant was 
the buyer of the Porsche and that Grant proved that $17,000 would compensate him 
for his actual damages resulting from Kagan’s violation of the DTPA.
        In 
his first of five issues on appeal, Kagan contends that no evidence supports the 
trial court’s award of $17,000 in actual damages to Grant because no evidence 
exists establishing the market value of the Porsche at the time Kagan sold it to 
Grant. Because the record before us is devoid of evidence of the market value of 
the Porsche at the time Kagan sold it to Grant in its allegedly defective 
condition, we will sustain Kagan’s first issue, reverse the trial court’s 
judgment, and render judgment that Grant take nothing.
        In 
DTPA cases involving alleged misrepresentations, a plaintiff may recover under 
either the “out of pocket” measure of damages or the “benefit of the 
bargain” measure of damages, whichever gives the plaintiff the greater 
recovery. Ford Motor Co. v. Cooper, 125 S.W.3d 794, 798-800 (Tex. 
App.—Texarkana 2004, no pet.). The “out of pocket” measure of damages is 
the difference between the value of what the plaintiff parted with and the value 
of what he or she received. Id. (citing W.O. Bankston Nissan, Inc. v. 
Walters, 754 S.W.2d 127, 128 (Tex. 1988)); Town East Ford Sales, Inc. v. 
Gray, 730 S.W.2d 796, 801 (Tex. App.—Dallas 1987, no writ) (op. on reh’g) 
(calculating damages in a DTPA case based upon the sale of an automobile as the 
difference between the actual cost of the automobile and the actual market value 
of the car as received in its defective condition); see also Vista Chevrolet, 
Inc. v. Lewis, 704 S.W.2d 363, 371 (Tex. App.—Corpus Christi 1985), aff'd 
in part and rev'd in part, 709 S.W.2d 176 (Tex. 1986) (same). To sustain a 
finding of “out of pocket” damages, there must be evidence of both the 
actual amount paid by the buyer and the actual market value of the car when it 
was received in its defective condition. Town East Sales, Inc., 730 
S.W.2d at 801. Market value is defined as the price property would bring when 
offered for sale by one who desires, but is not obligated, to sell and bought by 
one who is under no necessity to buy. Ford Motor Co., 125 S.W.3d at 799.
        In 
determining a “no evidence” issue, we are to consider only the evidence and 
inferences that tend to support the finding of the disputed fact and disregard 
all evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 
749, 754 (Tex. 2001); Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 
444, 450 (Tex. 1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 
661 (1951). Anything more than a scintilla of evidence is legally sufficient to 
support the finding. Cont’l Coffee, 937 S.W.2d at 450; Leitch v. 
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence 
exists if the evidence furnishes some reasonable basis for differing conclusions 
by reasonable minds about the existence of a vital fact. Rocor Int’l, Inc. 
v. Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
        Here, 
Grant sought “out of pocket” damages. But there is no evidence of the market 
value of the Porsche in its alleged defective condition at the time it was 
purchased by Grant. Grant purchased the Porsche from Kagan for $22,000, knowing 
that it needed some repairs. Jim drove the Porsche,[2] 
and approximately two weeks later took the Porsche to an auto mechanic who 
performed work totaling $4,139. Over the next several months, Jim repeatedly 
took the Porsche to the auto mechanic for work—to repair damages from rain 
after the Porsche’s windows were partially down during the night and it rained 
into the Porsche’s interior, to have an air intake grill installed, to repair 
a front spoiler, to get a new battery, to get a turbo hood emblem and deck shock 
placed on the car, to get a new roof skin installed, and to attempt to have a 
short shift kit installed. Jim drove the Porsche occasionally when it was not in 
the shop.[3]  Despite the mechanic’s work, Jim 
testified that the Porsche was “really not operable”; he was unable to drive 
it on a daily basis as he had intended when Grant purchased it.
        No 
expert testimony exists concerning the market value of the Porsche at the time 
Kagan sold it. Because Grant did not designate the parties’ jointly retained 
Porsche expert, Mr. Ed Mayo, as a testifying expert, and because Kagan 
designated Mayo as an expert only on the matters set forth in his report—which 
did not include any opinions on value—the trial court sustained Kagan’s 
objection to Mayo’s testimony on the issue of the market value of the Porsche 
at the time Kagan sold it.[4]  Mayo’s 
examination of the Porsche occurred after the auto mechanic hired by Grant had 
made extensive repairs and modifications. Mayo did not see or examine the 
Porsche as it existed when it was sold to Grant.
        Nonetheless, 
Mayo testified that when he examined the Porsche in 2001,
  
It was not worth as much as it would have been had it been a standard 911 SC 
Targa unmodified, and it was not worth as much as it would have been had it been 
a standard, factory-built 930 turbo car. It being a combination of the two and 
the general condition of it, if someone were asking me to buy the car and what 
they should pay for it, my answer would have been no more than $5,000.
 
 
And 
Jim testified that in the summer of 2000, after he had made numerous repairs to 
the Porsche and had determined that it was inoperable for the purpose of daily 
driving, he listed it for sale at a price of $30,000. He had some calls on the 
listing, but he provided incorrect information to the callers about the type of 
engine the Porsche contained, and someone offered to buy it for $5,000. 
Regardless of this testimony by Mayo and Jim, proof of market value at the time 
of trial is no evidence of value at the time of acceptance. See Town 
East Ford Sales, Inc., 730 S.W.2d at 802.
        Mayo 
also testified that if the repairs paid for by Grant had not been made, it would 
“not significantly” change his opinion of the value of the Porsche. He 
conceded, however, that in terms of this highly modified, unique, custom 
Porsche, no clearly defined market value exists. Mayo explained that some buyers 
are excited about and willing to pay for modifications, while others are not; 
with regard to a unique, custom car, “beauty is in the eye of the beholder.” 
The burden is on the plaintiff to establish his damages with reasonable 
certainty to enable a factfinder to compute them, but Mayo’s testimony as to 
the value of the parts he personally observed does not establish the market 
value of the Porsche at the time Grant purchased it.
        Finally, 
Appellees point to Jim’s testimony that the Porsche was basically inoperable, 
that is, not usable for everyday driving. The law is well-settled, however, that 
the intrinsic or personal value of a vehicle to its owner is not the equivalent 
of the market value of the vehicle. See, e.g., Vista Chevrolet, Inc., 
704 S.W.2d at 371 (holding that owner’s testimony of personal value is no 
evidence of actual market value of vehicle). Moreover, only the owner of the 
vehicle may testify as to intrinsic value, and the trial court made a finding of 
fact that Grant, not Jim, was the owner of the Porsche. See, e.g., Ford Motor 
Co., 125 S.W.3d at 799 (recognizing that owner, with some 
restrictions, may testify as to property’s value “even though such owner 
cannot qualify to testify about the value of like property belonging to someone 
else”) (emphasis added).
        Because 
no evidence exists in the record before us establishing the market value of the 
Porsche in its alleged defective condition at the time Grant purchased it, we 
sustain Kagan’s first issue. Compare Mercedes-Benz of North Am., Inc. v. 
Dickenson, 720 S.W.2d 844, 850 (Tex. App.—Fort Worth 1986, no writ) 
(holding car owner’s testimony that market value of car at purchase was $8,500 
less than amount he paid for the car was some evidence of market value of car at 
time of purchase). When we sustain a “no evidence” issue, it is our duty to 
render judgment for the appellant because that is the judgment the trial court 
should have rendered. See Tex. R. 
App. P. 43.3; Vista Chevrolet, Inc., 709 S.W.2d at 176. 
Accordingly, we reverse the trial court’s judgment and render judgment that 
Grant take nothing.
   
                                                                  SUE 
WALKER
                                                                  JUSTICE
 
 
PANEL 
B:   LIVINGSTON, GARDNER, and WALKER, JJ.
 
DELIVERED: 
March 31, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Jim acknowledged that the Porsche was running when he acquired it from Kagan 
before he took it to the auto mechanic; he said that he had gotten the Porsche 
up to 120 miles per hour on public streets.
3.  
Jim testified that he never had to have the Porsche towed before the mechanic 
worked on it; after the work, he had it towed twice.
4.  
The trial court ruled, “I’m not going to let him [testify] as to blue book 
value. . . . [H]e can look at parts and determine value based on the parts and 
what he personally observed.  Not blue book value or fair market value, but 
the value of the parts he personally observed.”