Barry Kagan v. R. Grant McCranie and Jim McCranie

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-136-CV

BARRY KAGAN APPELLANT

V.

R. GRANT MCCRANIE AND

JIM MCCRANIE APPELLEES

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellees Grant and Jim McCranie sued Appellant Barry Kagan for misrepresentations under the DTPA and for common-law fraud, negligence, and gross negligence after Grant McCranie purchased a 1979 Porsche automobile from Kagan for his son, Jim, as a high school graduation present.  The Porsche was a highly modified “performance” vehicle, containing an nonfactory engine, nonfactory suspension components, nonfactory transmission components, nonfactory seats, and numerous other modifications.  Following a bench trial, the trial court entered a judgment for Grant McCranie and made findings of fact and conclusions of law.  In its only finding of fact regarding damages, the trial court found that Grant was the buyer of the Porsche and that Grant proved that $17,000 would compensate him for his actual damages resulting from Kagan’s violation of the DTPA. 

In his first of five issues on appeal, Kagan contends that no evidence supports the trial court’s award of $17,000 in actual damages to Grant because no evidence exists establishing the market value of the Porsche at the time Kagan sold it to Grant.  Because the record before us is devoid of evidence of the market value of the Porsche at the time Kagan sold it to Grant in its allegedly defective condition, we will sustain Kagan’s first issue, reverse the trial court’s judgment, and render judgment that Grant take nothing.

In DTPA cases involving alleged misrepresentations, a plaintiff may recover under either the “out of pocket” measure of damages or the “benefit of the bargain” measure of damages, whichever gives the plaintiff the greater recovery.  
Ford Motor Co. v. Cooper, 
125 S.W.3d 794, 798-800 (Tex. App.—Texarkana 2004, no pet.).  The “out of pocket” measure of damages is the difference between the value of what the plaintiff parted with and the value of what he or she received.  
Id. 
(citing 
W.O. Bankston Nissan, Inc. v. Walters
, 754 S.W.2d 127, 128 (Tex. 1988)); 
Town East Ford Sales, Inc. v. Gray
, 730 S.W.2d 796, 801 (Tex. App.—Dallas 1987, no writ) (op. on reh’g) (calculating damages in a DTPA case based upon the sale of an automobile as the difference between the actual cost of the automobile and the actual market value of the car as received in its defective condition); 
see also Vista Chevrolet, Inc. v. Lewis
, 704 S.W.2d 363, 371 (Tex. App.—Corpus Christi 1985), 
aff'd in part and rev'd in part
, 709 S.W.2d 176 (Tex. 1986) (same).  To sustain a finding of “out of pocket” damages, there must be evidence of both the actual amount paid by the buyer and the actual market value of the car when it was received in its defective condition.  
Town East Sales, Inc.
, 730 S.W.2d at 801.
 Market value is defined as the price property would bring when offered for sale by one who desires, but is not obligated, to sell and bought by one who is under no necessity to buy.  
Ford Motor Co.
, 125 S.W.3d at 799.

In determining a “no evidence” issue, we are to consider only the evidence and inferences that tend to support the finding of the disputed fact and disregard all evidence and inferences to the contrary.  
Bradford v. Vento, 
48 S.W.3d 749, 754 (Tex. 2001)
; Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996);
 In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cont’l Coffee
, 937 S.W.2d at 450;
 Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

Here, Grant sought “out of pocket” damages.  But there is no evidence of the market value of the Porsche in its alleged defective condition at the time it was purchased by Grant.  Grant purchased the Porsche from Kagan for $22,000, knowing that it needed some repairs.  Jim drove the Porsche,
(footnote: 2) and approximately two weeks later took the Porsche to an auto mechanic who performed work totaling $4,139.  Over the next several months, Jim repeatedly took the Porsche to the auto mechanic for work—to repair damages from rain after the Porsche’s windows were partially down during the night and it rained into the Porsche’s interior, to have an air intake grill installed, to repair a front spoiler, to get a new battery, to get a turbo hood emblem and deck shock placed on the car, to get a new roof skin installed, and to attempt to have a short shift kit installed.  Jim drove the Porsche occasionally when it was not in the shop.
(footnote: 3)  Despite the mechanic’s work, Jim testified that the Porsche was “really not operable”; he was unable to drive it on a daily basis as he had intended when Grant purchased it. 

No expert testimony exists concerning the market value of the Porsche at the time Kagan sold it.  Because Grant did not designate the parties’ jointly retained Porsche expert, Mr. Ed Mayo, as a testifying expert, and because Kagan designated Mayo as an expert only on the matters set forth in his report—which did not include any opinions on value—the trial court sustained Kagan’s objection to Mayo’s testimony on the issue of the market value of the Porsche at the time Kagan sold it.
(footnote: 4)  Mayo’s examination of the Porsche occurred after the auto mechanic hired by Grant had made extensive repairs and modifications.  Mayo did not see or examine the Porsche as it existed when it was sold to Grant.

Nonetheless, Mayo testified that when he examined the Porsche in 2001, 

It was not worth as much as it would have been had it been a standard 911 SC Targa unmodified, and it was not worth as much as it would have been had it been a standard, factory-built 930 turbo car.  It being a combination of the two and the general condition of it, if someone were asking me to buy the car and what they should pay for it, my answer would have been no more than $5,000.

And Jim testified that in the summer of 2000, after he had made numerous repairs to the Porsche and had determined that it was inoperable for the purpose of daily driving, he listed it for sale at a price of $30,000.  He had some calls on the listing, but he provided incorrect information to the callers about the type of engine the Porsche contained, and someone offered to buy it for $5,000.  Regardless of this testimony by Mayo and Jim, proof of market value at the time of trial is no evidence of value at the time of acceptance.  
See
  
Town East Ford Sales, Inc.
, 730 S.W.2d at 802.  

Mayo also testified that if the repairs paid for by Grant had not been made, it would “not significantly” change his opinion of the value of the Porsche.  He conceded, however, that in terms of this highly modified, unique, custom Porsche, no clearly defined market value exists.  Mayo explained that some buyers are excited about and willing to pay for modifications, while others are not; with regard to a unique, custom car, “beauty is in the eye of the beholder.”  The burden is on the plaintiff to establish his damages with reasonable certainty to enable a factfinder to compute them, but Mayo’s testimony as to the value of the parts he personally observed does not establish the market value of the Porsche at the time Grant purchased it.

Finally, Appellees point to Jim’s testimony that the Porsche was basically inoperable, that is, not usable for everyday driving.  The law is well-settled, however, that the intrinsic or personal value of a vehicle to its owner is not the equivalent of the market value of the vehicle.  
See, e.g.
, 
Vista Chevrolet, Inc.
, 704 S.W.2d at 371 (holding that owner’s testimony of personal value is no evidence of actual market value of vehicle).  Moreover, only the owner of the vehicle may testify as to intrinsic value, and the trial court made a finding of fact that Grant, not Jim, was the owner of the Porsche.  
See, e.g., Ford Motor Co.
, 125 S.W.3d at 799 (recognizing that 
owner
, with some restrictions, may testify as to property’s value “
even though such owner cannot qualify to testify about the value of like property belonging to someone else”
)
 
(emphasis added). Because no evidence exists in the record before us establishing the market value of the Porsche in its alleged defective condition at the time Grant purchased it, we sustain Kagan’s first issue.  
Compare Mercedes-Benz of North Am., Inc. v.
 
Dickenson
, 720 S.W.2d 844, 850 (Tex. App.—Fort Worth 1986, no writ) (holding car owner’s testimony that market value of car at purchase was $8,500 less than amount he paid for the car was some evidence of market value of car at time of purchase).  
When we sustain a “no evidence” issue, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered.  
See
 
Tex. R. App. P. 
43.3; 
Vista Chevrolet, Inc., 
709 S.W.2d at 176.
  Accordingly, we reverse the trial court’s judgment and render judgment that Grant take nothing.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED: March 31, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Jim acknowledged that the Porsche was running when he acquired it from Kagan before he took it to the auto mechanic; he said that he had gotten the Porsche up to 120 miles per hour on public streets. 

3:
Jim testified that he never had to have the Porsche towed before the mechanic worked on it; after the work, he had it towed twice. 

4:
The trial court ruled, “I’m not going to let him [testify] as to blue book value. . . .  [H]e can look at parts and determine value based on the parts and what he personally observed.  Not blue book value or fair market value, but the value of the parts he personally observed.”