**Lester Goodson PONTIAC, Appellant,**

**v.**

**Rhea ELLIOTT, Appellee.**

**No. 01–88–00689–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 15, 1989.

Rehearing Denied Aug. 3, 1989.

Candace Sturdivant and David A. Gibson, P.C., Houston, for appellant.

L.T. Bradt, Houston, for appellee.

Before WARREN, DUNN and HUGHES, JJ.

## OPINION

WARREN, Justice.

This is an appeal from an award in a deceptive trade practices act case. Trial was to the court, which awarded appellee $17,320 in actual damages, $5,000 in mental anguish damages, $2,000 in damages under the DTPA provision for automatic doubling of the first $1,000 in actual damages, plus attorney's fees of $7,000, costs, and interest.

Appellee sued appellant for damages under the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. sec. 17.41 et seq. (Vernon 1987) (DTPA), and common law fraud, based on its sale of a GMC Suburban vehicle to appellee.

Appellee alleged that appellant: engaged in false, misleading, or deceptive acts or practices; engaged in unconscionable actions or course of action; committed fraud; breached the implied warranty of mer-chantability; breached the implied and express warranties of fitness for use; and breached the express warranty that the vehicle purchased was new.

In three points of error, appellant: (1) challenges the sufficiency of the evidence to support the award of $17,320 in actual damages; (2) contends that the trial court erred in awarding damages for mental anguish; and, (3) contends that the trial court erred in entering judgment under the DTPA because there was no finding that appellant's action was the producing cause of damages to appellee. Appellee brings two cross-points contending that: (1) the trial court erred in allowing appellant's expert witness to testify at trial; and (2) the trial court erred in not awarding the amount of attorney's fees requested by appellee's counsel at trial. Because appellant challenges the sufficiency of the evidence, a detailed review of the facts is required.

On May 10, 1985, appellee purchased a 1985 GMC Suburban from appellant for a total price of $17,320. At the time of purchase, appellee and her husband test drove the vehicle and noted that there were about 50 miles registered on the vehicle's odometer. The odometer statement, prepared by appellant and signed by appellee, indicated there were 10 miles on the odometer. Both parties knew that the odometer statement was not accurate. Appellee received a copy of a non-negotiable title to the vehicle, which described it as a new vehicle.

Previously, on April 18, 1985, appellant sold a 1985 GMC Suburban to Cathy Lamb. Mrs. Lamb drove the vehicle to her home that evening and returned it to the dealership the next day complaining of noises in the engine. Appellant allowed her to return the vehicle and sold her a different one. A repair order, contained in appellee's exhibits, shows that appellant performed adjustments on the engine. The vehicle identification number on the repair order shows that this was the same vehicle later sold to appellee. Appellant did not disclose to appellees that the vehicle had been sold to Lamb, nor did it tell them of the engine repairs.

Appellee testified that she would not have purchased the vehicle had she known of either the prior delivery and attempted sale, or the engine repairs. Appellee testified that the vehicle was worth nothing to her in the condition it was in at the time of the sale because it was defective, unsafe, and because of the prior ownership and damage. She testified that the vehicle was worth approximately $6,000 in the condition in which it existed at the time of trial. Appellee is still driving the vehicle, and has driven it over 61,500 miles since the sale. Appellee's husband, an attorney, was qualified by the court as an expert on mechanical work. He testified that, as an owner, the vehicle was worth nothing to him when purchased. He further testified that he had taken the vehicle to a dealership that sold Suburbans, told them about its problems, and the dealership told him the vehicle was worth $7,000 at the time of trial.

Dottie Allred, appellee's expert witness concerning the value of the vehicle, testified that she has been in the car business for a number of years. In her opinion, the market value of the vehicle at delivery would have been either, $2,500 or 25% less than its original sticker price, because the prior delivery made it a used vehicle. She testified that this vehicle would have been worth no more than $15,777 when purchased by appellee.

John Gilbert, appellant's expert and agent, testified that the market value of the vehicle at the time of purchase was the same as its purchase price. He further stated that a vehicle does not decline in value by a fixed amount when it is classified as used. He could not state how much this vehicle declined in value after the attempted sale to Lamb.

In its Findings of Fact and Conclusions of Law, the trial court found that: (1) the total consideration paid by appellee was $17,320; (2) appellant did not disclose the delivery of the vehicle to Lamb nor did it disclose the prior repairs to the engine; (3) appellee would not have purchased the vehicle had the prior delivery or engine repairs been disclosed; (4) appellant concealed and misrepresented facts in order to induce appellee into the sale; (5) appellant committed fraud in selling the vehicle to appellee as new; and (6) the vehicle had no value at the time it was delivered to appellee. The trial court also found that appellant did not present any evidence of the vehicle's value at the time of the sale.

In its first point of error, appellant complains that there is no evidence, or insufficient evidence, to support the trial court's finding that the vehicle had no value at the time of purchase. It specifically argues that the appellee's testimony as to value was non-probative as a matter of law, and that the only evidence of a difference in the market value of the vehicle "as represented" and "as sold" was Allred's testimony that the difference was approximately $1,543.

 Appellant's argument raises both no evidence and factual insufficiency points of error. When both "no evidence" and "insufficient evidence" points are raised, the court should rule upon the "no evidence" point first. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). If there is probative evidence, more than a scintilla, in support of the finding, the point will be overruled and the judgment will be affirmed, unless a factual insufficiency point has also been raised and the court sustains it on the basis of a full review of the evidence. *Mercer v. Bludworth,* 715 S.W.2d at 697.

 In deciding a "no evidence" point, we will consider only the evidence and inferences that, viewed in their most favorable light, tend to support the finding, and we must disregard all evidence and inferences to the contrary. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex. 1981). In deciding a "factual insufficiency" point, we are required to review all the evidence, including any evidence contrary to the finding of the court, and decide whether the judgment is so against the great weight and preponderance of the evidence as to be unjust. *Mercer v. Bludworth,* 715 S.W.2d at 697.

■ Findings of fact are not conclusive on appeal when, as in this case, a statement of facts appears in the record. Rather, the findings of fact are binding on the appellate court only if supported by evidence of probative force. *Stephenson v. Perlitz,* 537 S.W.2d 287, 289 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). Further, because a statement of facts is before us, we will review the legal conclusions drawn from the facts found, to determine their correctness. *Mercer v. Bludworth,* 715 S.W.2d at 697.

■ The court found that appellant had committed fraud and violated the DTPA, which finding is supported by the record. Thus, appellee is entitled to actual damages. In *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988), a DTPA case arising out of the purchase of a pickup truck, the Texas Supreme Court held:

> This court has defined actual damages as those recoverable at common law. Under common law, there are two measures of damages for misrepresentation: (1) the "out of pocket" measure, which is the "difference between the value of that which was parted with and the value of that which was received"; and (2) the "benefit of the bargain" measure, which is the difference between the value as represented and the value actually received. The DTPA permits a plaintiff to recover either the "out of pocket" or the "benefit of the bargain" damages, whichever is greater.

754 S.W.2d at 128 (citations omitted).

■ Appellee's burden of proof was to show either the difference between the fair market value of the vehicle as delivered and as represented, or the difference in value between that with which she parted and that which she received. *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d at 128 (suit under DTPA); *Woodyard v. Hunt,* 695 S.W.2d 730, 732 (Tex.App.—Houston [1st Dist.] 1985, no writ) (suit for fraud). The evidence offered to support the judgment, which awarded the full purchase price of the vehicle as her actual damages, includes appellee's testimony that her assessment of the value of the car at delivery "is zero in light of the fact that [there was] prior ownership and prior damage to the vehicle. And the repairs, had I known that, no, I would not have bought the vehicle. It would not be worth a cent to me." In addition, appellee's husband testified that, "[a]s owner of the vehicle I would believe it has no value."

Appellant contends that the testimony of appellee and her husband was not probative, as a matter of law, because it concerned the intrinsic value of the vehicle to them, rather than its market value. The Texas Supreme Court, in *Porras v. Craig,* 675 S.W.2d 503, 505 (Tex.1984), held that for a property owner to testify about the value of his or her property, the "testimony must show that it refers to market, rather than intrinsic or other value of property." We have previously held in *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 146–47 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) (quoting *Bavarian Autohaus, Inc. v. Holland,* 570 S.W.2d 110, 115 (Tex.Civ.App.—Houston [1st Dist] 1978, no writ)), that:

> When the owner of goods seeks to testify to their value, as distinguished from their value to him, the Texas rule is that he must show that he is qualified to do so; he is prima facie qualified to state it if he declares he knows the market value. (Citations omitted.)

There is nothing in the record to indicate that appellee or her husband were familiar with the actual market value of the vehicle in its defective condition or that their valuation referred to anything other than the intrinsic value of the automobile to them. Neither was there any showing that the vehicle was of such a unique nature as to constitute a basis for a recovery of damages according to its intrinsic value. Thus, appellee failed to show that the difference between the fair market value of the vehicle as delivered and as represented, was zero. The evidence in this case is similar to that presented in *Vista Chevrolet, Inc. v. Lewis,* 704 S.W.2d 363, 371 (Tex.App.—Corpus Christi 1985), *aff'd in part, rev'd in part,* 709 S.W.2d 176 (Tex.1986). In *Vista,*

the appellee testified that the value of the vehicle in question was "nothing." The appellant argued that "it is inconceivable ... how the vehicle could be totally worthless ("0") when the undisputed evidence showed that the vehicle had been driven some forty thousand (40,000) miles at the time of trial ... If the vehicle was being used it had some value even if it was for simple salvage." *Vista Chevrolet, Inc.*, 704 S.W.2d at 371. After reviewing the record, the Corpus Christi Court of Appeals held that there was no evidence regarding the actual market value of the automobile as received in its defective condition to support the submission of, and the jury's finding in response to, the DTPA damages issue.

■ In our case, though there is no evidence to support a finding that the vehicle was worthless, there is some competent evidence to show there was a difference in the market values of the truck as represented, and as delivered. Appellee's expert, Allred, testified that the vehicle's delivery to the Lambs rendered it a used vehicle. She further testified that this vehicle depreciated by at least 25% off the original window sticker price of $18,277, and had been worth no more than $15,777 when delivered to appellee. Since the measure of damages in this case is the difference in market value of the vehicle as represented and as delivered, and the only evidence produced by appellee was her expert's testimony that the difference was about $1,543, we find that the evidence at trial would support a finding only that appellee suffered actual damages of $1,543. We therefore overrule appellant's "no evidence" point, but sustain its "insufficiency" point, and hold that the evidence is factually insufficient to support the court's finding of $17,320 in actual damages.

■ In its second point of error, appellant contends that the court erred in awarding $5,000 in mental anguish damages because there was no evidence, or insufficient evidence, that any mental anguish resulted from the alleged acts and/or omissions of appellant made the basis of this suit.

In December of 1985, appellee, her family, and a niece were vacationing in Colorado. While they were driving up a mountain pass, a wheel on the truck came off, and the vehicle came to rest just short of a steep cliff overlooking a stream below. Appellee testified about the mental anguish that the incident caused. Appellee specifically pled the facts of the incident and asked for mental anguish damages, and the court's finding confined appellee's mental anguish award to the wheel loss.

■ In *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984), the Texas Supreme Court held that a plaintiff in a DTPA case is entitled to recover damages for mental anguish if the jury finds that the complained of acts were committed "knowingly," and that such acts proximately caused plaintiff's mental anguish. In our case, the court found that appellant acted "knowingly in all of its conduct involved in the sale of the vehicle to appellee," but made no finding as to whether appellant knew of the wheel's propensity to come off the vehicle. There is evidence to support a finding that appellee suffered mental anguish as a result of the sale, but there is no evidence to support a finding that appellant knew of the wheel's propensity to come off the vehicle, and concealed this fact from appellee, as specifically pled by appellee. Appellee's pleadings and the court's findings confine the mental anguish damages to the Colorado incident. This amounts to a finding of mental anguish proximately caused by a product defect rather than from the appellant's selling appellee a used car rather than a new one. However, other testimony, some of which was admitted without objection, evidenced mental anguish, and it could be urged that the issue of mental anguish arising from events other than the wheel loss was tried by consent. But, appellant could argue just as logically that the other evidence of mental anguish was not tried by consent because of appellee's limitation of mental anguish in her pleading to the Colorado incident. We hold that the finding of mental anguish caused by the wheel's loss, and appellant's concealing the fact that the wheel had a propensity to come off, was

legally insufficient because there was no evidence that appellant knew of such a propensity; or that it concealed such a fact. We sustain appellant's "no evidence" point of error, but in the interest of justice, remand the mental anguish issue along with the other damage issues, for determination of whether appellant is entitled to damages for mental anguish and if so, the amount of damages to which appellee is entitled. Tex.R.App.P. 81(b)(1); *U.S. Fire Ins. Co. v. Carter*, 473 S.W.2d 2 (Tex.1971).

In its third point of error, appellant contends that the trial court erred in entering judgment under the DTPA because there was no finding that the occurrence in question was a producing cause of damages to appellee.

Sec. 17.50(a) of the DTPA provides that a consumer may recover in an action under the DTPA when the acts and/or omissions of the defendant, which were violative of the Act, constitute a producing cause of actual damages. The trial court found that appellant had misrepresented the vehicle as new and that in fact, it was used. As discussed under appellant's first point of error, appellee suffered damages in the amount of the difference in the value of the vehicle as represented, and the value of the vehicle in the condition in which it was actually sold.

Appellant's third point of error is overruled.

In appellee's first cross-point, she complains that the trial court erred in allowing John Gilbert, appellant's expert witness, to testify about the value of the vehicle and asks that we strike any testimony not given in his capacity as corporate representative of appellant. Because we did not consider Gilbert's testimony in deciding the point of error challenging the sufficiency of the evidence to support the actual damages awarded by the trial court, we need not address appellee's request that said testimony be stricken.

Appellee's first cross-point is overruled.

In appellee's second cross-point, she contends that the court erred in not awarding her $10,000 in attorney's fees, which is the amount that her trial counsel testified was reasonable. We disagree. The amount of attorney's fees awarded is within the sound discretion of the trial court and should not be disturbed on appeal unless there is an abuse of discretion. *Brazos County Water Control & Improvement Dist. No. 1 v. Salvaggio*, 698 S.W.2d 173, 177 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). We do not find an abuse of discretion in this case.

The trial court has great latitude in fixing attorney's fees. The court must consider several elements, including the amount involved, the actual services performed, the time required for trial, the situation of the parties, and the results obtained. *Id.* at 178. In support of the request for $10,000 in fees, appellee's counsel testified as an expert witness. He testified regarding his qualifications. Further he testified that his associate prepared a demand letter and that he himself researched and drafted the amended petition; attended, then reviewed, one deposition; contacted his three experts about two weeks before trial; contacted the Lambs through a private investigator two days before trial; responded to interrogatories and requests for production; reviewed various documents; and attended trial. On cross-examination he admitted that he did not keep time records of his work on this case. He testified that he had been paid $500 by appellee's husband and that his agreement with appellee provides that he will receive all attorney's fees awarded and up to one-third of the punitive damages awarded. We do not find that the trial court's award was an abuse of discretion.

Appellant's second cross-point is overruled.

Because we are unable to remand the cause for a retrial on damages only, we reverse and remand for a retrial on all issues. Tex.R.App.P. 81(b)(1); *Thomas v. Morrison*, 537 S.W.2d 274 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.); *Cantile v. Vanity Fair Properties*, 505 S.W.2d 654 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.).

DUNN, Justice, dissenting.

I concur with the majority as to all points of error, with one exception. As to point of error one, I respectfully dissent.

The appellant complains, in its first point of error, that there is no evidence, or insufficient evidence, to support the court's finding that the vehicle had no value at the time of purchase. The majority excerpts testimony of the appellee and her husband, pertaining to the intrinsic value (value to her) of the vehicle in question, ignoring her previous testimony that supports the Court's finding that the value of the vehicle at the time of purchase was "0."

The following is the testimony excerpted by the majority in their attempt to support their conclusion that "... there is no evidence to support a finding that the vehicle was worthless, ..." but placed in context. On cross-examination the appellee was asked the date she met with the General Motors representative:

Q. I just want to know if you can tell us when you learned of it—when you learned of the repair work that you say you would not have bought the vehicle had you known about it....

\* \* \* \* \* \*

A. You ask me would I have bought that—or the value of the vehicle was. And my assessment is zero in light of the fact that prior ownership and prior damage to the vehicle. And the repairs, had I known that, no, I would not have bought the vehicle. It would not have been worth a cent to me.

(The portion quoted by the majority is underlined.)

Further, the appellee's husband's testimony, quoted by the majority, was in answer to a question about the value of the vehicle in its present state. Her husband answered as follows:

Q. Okay. As the owner of the vehicle, more especially as an attorney, do you have an opinion as to what the value of that vehicle is *in its present state* having to disclose all of the known defects?

A. Mr. Bradt, *as the owner of that vehicle, I would believe it has no value.* (Emphasis added.)

The majority ignores testimony of the appellee in support of the court's finding pertaining to the value of the vehicle, considering its mechanical condition, at the time it was sold, which is as follows:

Q. As the owner of the vehicle, do you have an opinion as to what that vehicle was worth at the time that it was sold to you in the condition that it was sold to you?

A. It wouldn't have been worth anything.

Q. Okay. Why not?

A. Because it was a defective vehicle. An unsafe vehicle.

On cross examination, Rhea Elliott testified:

Q. Okay. As I understood your testimony earlier, the car was worthless in your opinion because of the condition at the time that you were sold it. Is that right?

A. That is correct.

Q. Zero was the value?

A. That's correct.

In addition to the above testimony, the appellee testified that she paid $17,320.00 for the automobile. I would find that there is sufficient probative evidence to support the court's finding and the test for the measure of damages, i.e. "(1) The out of pocket measure, which is the difference between the value of that which was parted with (i.e. $17,320.00) and the value of that which was received (i.e. "0")".

Under Tex.R.Evid. 701, a lay witness is qualified to render an opinion so long as it is "rationally based" on her perception, and is "helpful" to a clear understanding of a fact in issue.

An owner of property can prove market value by her opinion testimony, even though she may not be qualified to testify about the value of like property belonging to another. *Porras*, 675 S.W.2d at 504. She is *prima facie qualified* to state her opinion if she declares she knows the market value. *Bavarian Autohaus, Inc. v.*

*Holland,* 570 S.W.2d 110, 115 (Tex.Civ.App. —Houston [1st Dist.] 1978, no writ). *However,* if, as in this case, the owner is not asked specifically if she knows the market value, we look to her testimony to determine if the opinion expressed by the owner as to value refers to market value, as distinguished from its intrinsic value or its personal value to her. *Powell–Buick–Pontiac GMC, Inc. v. Bowers,* 718 S.W.2d 12, 15 (Tex.App.—Tyler 1986, writ ref'd n.r.e.). If the owner's articulated basis for her opinion does not affirmatively demonstrate that the value is personal to her, she has prima facie established her qualification to testify about market value. *Porras,* 675 S.W.2d at 505; *see also Bowers,* 718 S.W.2d at 15.

The only testimony tending to establish the market value of the vehicle sold to the appellee, based on its actual condition at the time it was delivered, came from the appellee. Although she testified to the value of the vehicle *to her,* this testimony is unnecessary to the determination of the issue and can be ignored by the court. There is no testimony in this record that questions, or diminishes, her testimony of market value of the vehicle *in its condition* at the time of delivery. Neither Dottie Allred, nor John Gilbert testified concerning the *value of this vehicle in its defective condition,* at the time of its delivery. The majority indicates that they testified as to "this vehicle." Their testimony referred to the value of any vehicle of this type, the only criteria being that it was a *used vehicle* without giving any consideration to the mechanical condition of the car involved herein.

Appellee's attorney, in posing the question to the appellee, used the term "worth" in attempting to establish the market value of the vehicle at the time of purchase. There was no personal application of the term "worth" to the appellee herself. The appellee's answer established the basis of her opinion, i.e., the defective and unsafe condition of the vehicle. There were no "personal" reasons given, as in *Porras* and *Vista,* quoted by the majority, and she did not engage in speculation, or equivocation, about the vehicle's value as in *Walters.* I

would find that her testimony sufficiently refers to market value and not personal value. Therefore, she made a prima facie demonstration of her qualification to state her opinion. It was left for the appellant to impeach her testimony through cross-examination, or to rebut it through the testimony of witnesses. *Hillin v. Hagler,* 286 S.W.2d 661, 662 (Tex.Civ.App.—Fort Worth 1956, no writ).

Further, there was no objection by the appellant to the appellee's testimony as there was in *Vista* and *Porras.* She was not taken on voir dire examination by the appellant as to her competency. In the absence of such a request, the competence of the witness is established. *Cortez v. Mascarro,* 412 S.W.2d 342 (Tex.Civ.App.—San Antonio 1967, no writ). The strength or weakness of the qualifications of the witness is merely a factor to be considered by the court in weighing the testimony. *Johnson v. Egert,* 233 S.W.2d 958 (Tex.Civ. App.—Galveston 1950, writ ref'd n.r.e.).

Considering the foregoing, I would overrule the appellant's no evidence and insufficiency points of error, and hold that the evidence is factually sufficient to support the court's finding of $17,320.00 in actual damages.