In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00009-CV
______________________________


FORD MOTOR COMPANY AND
CRANE LINCOLN-MERCURY, INC., Appellants
 
V.
 
JOHN T. COOPER, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 99C0130-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          John T. Cooper purchased a new 1998 Lincoln Town Car from Crane Lincoln-Mercury, Inc., an authorized dealer for Ford Motor Company, in Texarkana. After
experiencing a steering problem with the vehicle, he sued Crane and Ford for alleged
violations of the Texas Deceptive Trade Practices Act (DTPA)


 and for breach of warranty. 
The jury found Crane and Ford did engage in deceptive trade practices and failed to
comply with the warranty, and awarded Cooper $5,000.00 for diminished value of the
vehicle and $1,000.00 for expenses. The jury also awarded Cooper additional damages
of $44,000.00 against Crane and $22,000.00 against Ford for knowingly engaging in such
conduct. The trial court reduced the award and rendered judgment against Crane and
Ford for a total of $18,000.00.


 Ford and Crane appeal, contending the evidence was
legally insufficient to support the jury's award of actual damages. We agree and reverse
the judgment, but in the interests of justice remand the case for a new trial.
Background
          Cooper purchased the automobile in question August 29, 1998, for $33,150.00. He
testified he decided to buy a Lincoln Town Car because of its dependability and ease of
driving during long trips. When he test drove the car, Cooper discovered it "had a pull on
the steering wheel." He discussed the problem with Crane's salesman, who assured him
that the car needed an alignment and that it would be repaired before Cooper purchased
the vehicle. Cooper testified that, when he took possession August 29, he was assured
by the salesman the car had been repaired. He discovered, however, the problem had not
been corrected to his satisfaction—that the car drifted to the right at high speeds and to the
left at low speeds. He testified pressure had to be applied to the steering wheel in order
to keep the vehicle on the road.  
          Cooper returned the vehicle to Crane on numerous occasions for the dealership to
correct the problem. Crane had the vehicle realigned under the warranty each time, but
Cooper testified the problem persisted. Cooper took the vehicle to several independent
repair shops for evaluations. He testified Craig Cummins, of Superior Spring and Brake
in Conway, Arkansas, found the car dangerous to drive long distances.


 Cooper also
testified Dale Clark, of Cooper Tire and Supply


 in Texarkana, told him the car was
dangerous. After the vehicle had been driven approximately 1,000 miles, Cooper decided
to park it and cease using it. Cooper testified that he felt the car was dangerous to drive
on the highway and that the car should go back to the manufacturer. 
          Regarding the value of the car and the expenses he incurred in having the car
evaluated, Cooper testified as follows: 
          Q. Now, you've already told the jury about how much you paid for the
car [$33,150.00]. Did you incur some expenses trying to get it evaluated and
get this information to Crane so they would talk to you and solve the
problem?
 
          A. Yes, I did.
 
          Q. And are you asking the jury to make a finding that you're entitled
to -- based on the action that you've testified to here today, that you're
entitled to have your money refunded?
 
          A. Yes, I am. I can't use the car.
 
          Q. Where is the car now?
 
          A. The car's at my house . . . in the garage.
 
          Q. And why have you not driven that car?
 
          A. It is unsafe for what I want it for, long distance travel, it's fatiguing. 
And so we bought [another] car to be able to make long trips, . . . . 
 
                     . . . .

          Q. Mr. Cooper, I believe you've said that the car is parked in the
garage because you feel it's unsafe to drive it. Just tell me what value would
you place on that car. 
 
          A. Nothing. It's absolutely worthless to me for what I bought it for. 
 
          Joe Crane, co-owner of the dealership, testified there was an alignment concern
with the car, but that it could be repaired. He testified that he sold the car for $33,150.00
and that the value of the car was not diminished because of the alignment problem. 
Jury Findings
          In answer to the questions submitted in the court's charge, the jury found: 1) Crane
and Ford engaged in one or more false, misleading, or deceptive acts or practices that
were a producing cause of actual damages to Cooper; 2) Crane and Ford failed to comply
with a warranty, and said failure was a producing cause of damages to Cooper; 3)
$5,000.00 would fairly and reasonably compensate Cooper for the difference between the
fair market value of the car in the condition in which it was sold to him and the value it
would have had if it had been as warranted and represented, and $1,000.00 would fairly
and reasonably compensate him for his expenses; 4) Crane's and Ford's conduct found
in 1) or 2) above was committed knowingly; and 5) $44,000.00 should be assessed against
Crane and $22,000.00 against Ford as additional damages. 
Standard of Review 
          In determining a no-evidence issue, we are to consider only the evidence and
inferences that tend to support the finding and disregard all evidence and inferences to the
contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). A no-evidence point will be sustained when
(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove a vital fact,
(c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the
evidence conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co.
v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by reasonable
minds about the existence of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77
S.W.3d 253, 262 (Tex. 2002).
Fair Market Value
          The Legislature's stated public policy in enacting the DTPA was to "protect
consumers against false, misleading, and deceptive business practices, . . . [and]
unconscionable actions, . . . ." Tex. Bus. & Com. Code Ann. § 17.44(a) (Vernon 2002); see
Latham v. Castillo, 972 S.W.2d 66, 68 (Tex. 1998). The Act "shall be liberally construed
and applied" to promote that underlying purpose. Tex. Bus. & Com. Code Ann. § 17.44(a);
Latham, 972 S.W.2d at 68. Under the Act, "each consumer who prevails may obtain . . .
the amount of economic damages found by the trier of fact." Tex. Bus. & Com. Code Ann.
§ 17.50(b)(1) (Vernon 2002). "Economic damages" are defined as "compensatory
damages for pecuniary loss, including costs of repair and replacement." Tex. Bus. & Com.
Code Ann. § 17.45(11) (Vernon 2002). 
          In cases involving misrepresentation, plaintiffs may recover under either the "out of
pocket" measure of damages or the "benefit of the bargain" measure of damages,
whichever gives the plaintiff the greater recovery. Leyendecker & Assocs. v. Wechter, 683
S.W.2d 369, 373 (Tex. 1984). The "out of pocket" measure is the difference between the
value of what the plaintiff parted with and the value of what he or she received. W.O.
Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988). The "benefit of the
bargain" measure of damages is the difference between the value as represented and the
actual value received. Leyendecker & Assocs., 683 S.W.2d at 373. The measure of
damages pled by Cooper was the difference between the fair market value of the car in the
condition in which it was sold to him and the value it would have had if it had been as
warranted and represented. This was the measure of damages the jury was instructed to
use in assessing Cooper's economic damages (not including expenses). 
          Both Cooper and Crane testified they negotiated a price of $33,150.00 for the
vehicle. The price agreed on between two parties is sufficient evidence to support a fact
finding on market value in an action under the DTPA. See Chrysler Corp. v.
Schuenemann, 618 S.W.2d 799, 805 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd
n.r.e.); see also Jack Roach Ford v. De Urdanavia, 659 S.W.2d 725, 728–29 (Tex.
App.—Houston [14th Dist.] 1983, no writ). There was, therefore, evidence of the market
value of the vehicle as warranted and represented. 
          Crane and Ford claim the judgment cannot stand, however, because no evidence
of damages was offered as to the actual market value of the vehicle in its alleged defective
condition. They contend Cooper's only attempt at proving such value was his own opinion,
which was legally insufficient because: 1) his opinion referred to the vehicle's personal
value to him, not its market value; and 2) his opinion did not refer to the value of the vehicle
in its alleged defective condition at the time of purchase. 
          Crane and Ford rely on Porras v. Craig, 675 S.W.2d 503 (Tex. 1984); Lester
Goodson Pontiac v. Elliott, 775 S.W.2d 395 (Tex. App.—Houston [1st Dist.] 1989, writ
denied); and Vista Chevrolet, Inc. v. Lewis, 704 S.W.2d 363 (Tex. App.—Corpus Christi
1985), aff'd in part & rev'd in part, 709 S.W.2d 176 (Tex. 1986), for their position that
Cooper's testimony referred to the personal intrinsic value the vehicle had to him, and was
no evidence of its actual market value. 
          It is a longstanding rule that an owner of property can testify as to its market value
even though such owner cannot qualify to testify about the value of like property belonging
to someone else. However, as the Texas Supreme Court explained in Porras, an owner's
testimony in this regard is not without restrictions: 
In order for a property owner to qualify as a witness to the damages to his
property, his testimony must show that it refers to market, rather than
intrinsic or some other value of the property. This requirement is usually met
by asking the witness if he is familiar with the market value of his property. 

Porras, 675 S.W.2d at 504–05.
          Market value is defined as the price property would bring when offered for sale by
one who desires, but is not obligated to sell, and is bought by one who is under no
necessity to buy. See Waste Disposal Ctr., Inc. v. Larson, 74 S.W.3d 578, 583 (Tex.
App.—Corpus Christi 2002, pet. denied). Intrinsic value, on the other hand, is an inherent
value not established by market forces; it is a personal or sentimental value. Star Houston,
Inc. v. Kundak, 843 S.W.2d 294, 298 (Tex. App.—Houston [14th Dist.] 1992, no writ). 
          In Porras, Craig, the plaintiff landowner, sued his neighboring landowner, Porras,
for damages from Porras' clearing and removal of trees on Craig's side of the fence line. 
Craig's expert testified that in his opinion the value of the land in question was in fact
enhanced from Porras' clearing. Porras, 675 S.W.2d at 505. Craig testified the diminution
in value to his land from the clearing was $20,000.00. Id. He reasoned as follows:
Well I bought this land to build a retirement home on and I am fifty-seven
and my wife is fifty-six and she's not--she's crippled so she wants to get out
in the country, too. And we bought that for that reason and now we are
afraid to build out there. And the reason we're afraid is because of the exotic
animals that will be put next to us. Also they patrol the fence with guns. A
sign on their fence [sic] they'll shoot if you go across that fence. And about
a month ago there was a fire started on the grass on my property and burned
in under my trees and if my wife had been there by herself she couldn't have
got away. 
Id. 
          Based on the jury's findings, the trial court awarded Craig $7,000.00 in actual
damages and $50,000.00 in exemplary damages against Porras. Id. at 504. Porras
appealed and contended there was no evidence to support the award of actual damages
to the land. Id. The Texas Supreme Court agreed and found this was not just a case in
which the lawyer failed to ask his client if he was familiar with the market value of the
property. Id. at 505.


 Instead, the owner's testimony affirmatively showed he referred to
personal rather than market value. Id. (citing Stinson v. Cravens, Dargan & Co., 579
S.W.2d 298, 299 (Tex. Civ. App.—Dallas 1979, no writ)). 
          In the instant case, Cooper, like Craig in Porras, did not state he was familiar with
the market value of his property. Further, Cooper testified he regarded the vehicle as
worthless for the purpose for which he bought it: driving long trips. His testimony, like
Craig's, affirmatively referred to the value of the property to him for his uses and purposes,
and did not reference the market value of the property in any respect. 
          Lewis and Elliott likewise held that testimony which affirmatively shows the owner
is testifying to personal value, not market value, is no evidence as to the actual market
value of a vehicle. In Lewis, 704 S.W.2d at 366, Mr. and Mrs. Lewis purchased a new
automobile from Vista Chevrolet for $13,992.80. Thereafter, the car would not start after
it had sat for a short period and required a "jump start." Id. Mrs. Lewis took the vehicle
back to Vista Chevrolet on several occasions to have the problem repaired, but the
problem persisted. Id. at 366–67. Suit was subsequently filed against Vista Chevrolet on
a claim for revocation of acceptance and for damages under the DTPA. Id. at 367. At the
time of trial, the vehicle had been driven approximately 40,000 miles. Id. Mrs. Lewis
testified that "the value of [the vehicle in] hindsight knowing that it's defective" was
"nothing." Id. at 371. She also testified the vehicle was worth "nothing" or was "really
worthless" because she could not depend on it and she could not sell it. Id. The jury
awarded plaintiff $13,992.80, the entire purchase price of the vehicle, as damages under
the DTPA claim as the difference between the actual cost of the automobile and the value
of the automobile received. Id. The appellant argued "it is inconceivable . . . how the
vehicle could be totally worthless ("0") when the undisputed evidence showed that the
vehicle had been driven some forty-thousand (40,000) miles at the time of trial . . . If the
vehicle was being used it had some value even if it was for simple salvage." Id. 
          The court found there was nothing in the record to suggest that Mrs. Lewis'
"valuation referred to anything other than the intrinsic value of the automobile to her." Id. 
The court found Mrs. Lewis' testimony was no evidence regarding the actual market value
of the automobile as received in its defective condition, and the court found no other
evidence to support the submission of and the jury's finding on the DTPA damages issue. 
Id. at 372. 
          In Elliott, 775 S.W.2d at 397, Elliott purchased what she thought was a new GMC
Suburban. She later discovered the vehicle had been purchased before and returned to
the dealership because of engine problems. Id. The dealership repaired the engine, but
did not disclose to Elliott the prior purchase or the engine repairs. Id. Elliott testified the
value of the vehicle at delivery was "zero in light of the fact that [there was] prior ownership
and prior damage to the vehicle," and "[i]t would not be worth a cent to me." Id. at 399. 
In addition, her husband testified that, "[a]s owner of the vehicle I would believe it has no
value." Id. Elliott's expert testified the market value of the vehicle at delivery would have
been either $2,500.00 or twenty-five percent less than its original sticker price, because the
prior delivery made it a used vehicle. Id. at 398. The trial court awarded Elliott the full
price of the Suburban as her actual damages on her DTPA claim against the dealership. 
Id. 
          The Houston Court of Appeals reversed and remanded for a new trial. Id. at 401. 
The court found the testimony of Elliott and her husband was not probative as a matter of
law because nothing in the record indicated they were familiar with the actual market value
of the vehicle in its defective condition or that their valuation referred to anything other than
the intrinsic value of the automobile to them. Id. at 399. The court found no evidence to
support a finding the vehicle was worthless, but found the expert's testimony was probative
on the diminished market value of the vehicle. Id. at 400. The court, therefore, overruled
the no-evidence point of error, but sustained the insufficiency point because the evidence
was factually insufficient to support the award of the full price of the vehicle as actual
damages. Id. 
          Cooper cites Fid. & Cas. Co. v. Underwood, 791 S.W.2d 635 (Tex. App.—Dallas
1990, no writ), overruled in part, Am. Mfrs. Mut. Ins. Co. v. Schaefer, No. 02-0295, 2003
Tex. LEXIS 472 (Tex. Oct. 16, 2003), for his position that, because he had conferred with
several mechanics who told him the vehicle was defective and dangerous to drive, his
testimony had some probative value on the issue of the vehicle's market value. 
          In Underwood, 791 S.W.2d at 638, Underwood purchased a new GMC pickup for
approximately $11,000.00. Shortly thereafter, the truck was stolen, abandoned, and found
with its front end submerged in a lake. Id. Underwood's insurance carrier, Fidelity &
Casualty Company, tendered $3,509.08 as complete satisfaction for the truck's repair and
refused to communicate further with Underwood or his attorney. Id. at 638–39. 
Underwood filed suit alleging contract issues and violations of the DTPA and the Insurance
Code. Id. at 639. The jury found in favor of Underwood on all issues and awarded him
$64,887.00. Id. On appeal, Fidelity contended there was no evidence of the market value
of Underwood's vehicle immediately after the loss. Id. at 641. Underwood's expert, the
owner of a car dealership, testified flood-damaged vehicles generally depreciate about
sixty-six percent. Id. He testified that General Motors would not retail a flood-damaged
vehicle because of potential later liability, but that such vehicles have some value if sold
through a salvage pool. Id. at 642. Underwood testified that, on the basis of what he had
learned about flood-damaged vehicles, his vehicle had no value. He testified as follows:
Q Okay. As a result of the occurrences in this lawsuit, have you undertaken
to learn from anyone what the consequences of flood damage are to a
vehicle?
 
          . . . .
 
A Yes. 
 
Q And in response to the information you have heard, what has been your
decision on that matter?
 
A That I don't want one.
 
Q Under any circumstances, would you want a flood damaged vehicle?
 
A No.
 
Q Are you aware of any laws that deal with the permanent notation on title
of a flood damaged vehicle?
 
A I've been told they have to be stamped as a flood damaged vehicle.
 
Q Okay. And have you ever attempted to buy or sell a flood damaged
vehicle?
 
A No. 
 
. . . .
 
Q Dr. Underwood, would you tell the jury the actual cash value of this truck
to you on the day that the vehicle was stolen, before it was stolen.
 
A Actual cash value?
Q Yes.
 
A Probably around $10,500.
 
Q And will you tell the jury the actual cash value of this vehicle to you after
the flood damage occurred?
 
A Nothing, 0.

Id. at 641. 

          The Dallas Court of Appeals held that Underwood's testimony showed he was
testifying to matters within his knowledge and that the testimony had some probative value
on the issue of market value. Id. at 642 (citing River Oaks Townhomes Owners' Ass'n, Inc.
v. Bunt, 712 S.W.2d 529, 533 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.);
Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett, 698 S.W.2d 271, 275–76 (Tex.
App.—Fort Worth 1985, no writ); Tom Benson Chevrolet, Inc. v. Alvarado, 636 S.W.2d
815, 823 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)). The court therefore found
Underwood's testimony provided some evidence of the market value of the vehicle in its
defective condition. 
          In Underwood, the owner testified that, from his experiences in dealing with his
flood-damaged car, and the information he learned in the marketplace as to its value, the
vehicle was worthless. In contrast, the substance of Cooper's testimony, like those of the
owners in Porras, Lewis, and Elliott, affirmatively revealed that the basis of his opinion was
the intrinsic or personal value of the automobile to him. The evidence showed Cooper took
the vehicle to various mechanics, who regarded the vehicle as unsafe for long trips. There
was no evidence as to how that affected the market value of the vehicle. 
          We, like the Texas Supreme Court in Porras, "should not be understood as
retreating from the general rule that an owner is qualified to testify about the market value
of his property." Porras, 675 S.W.2d at 505. And we, like the court in Underwood, do not
consider that an owner's use of the words "to me," in stating his or her opinion concerning
the value of his or her own property, automatically expresses intrinsic, rather than market,
value so long as the record affirmatively shows, as it did in Underwood, that such opinion
is based on market forces. Even the specific words "market value" are not necessary as
long as the record is clear the opinion expressed is based on market forces, not solely on
intrinsic or personal value. 
          A review of Cooper's testimony reveals that his valuation of the vehicle was based
on the personal value of the vehicle to him. His testimony was he purchased a Lincoln
Town Car because of its attributes for comfort, safety, and ease of driving. He testified the
main purpose for buying the vehicle was to make long trips to Dallas and Alabama. He did
not, however, regard the vehicle as dangerous for "running errands . . . in town." He did
regard the vehicle as "unsafe for what I want it for, long distance travel . . . . And so we
bought the other car to be able to make long trips, . . . ." He testified the value of the
vehicle was "[n]othing," or "absolutely worthless to me for what I bought it for." The basis
of his valuation was the vehicle's personal value to him, not the price the vehicle would
bring on the market. The Texas Supreme Court in Porras found that such opinion
testimony, which affirmatively shows the owner is referring to personal, not market, value,
is no evidence. For those reasons, Cooper's testimony is no evidence regarding the
market value of the automobile as received in its defective condition to support the
submission of, and the jury's finding in response to, the DTPA damages issue. 
          There was substantial evidence the vehicle was in a defective condition when
Cooper purchased it. Both Cooper and Joe Crane testified regarding the steering problem. 
However, there was no evidence of a reduction in market value. The only evidence of the
value of the car in its defective condition was Joe Crane's testimony that the value of the
vehicle had not diminished because of the alignment concern. The burden is on the
plaintiff to establish its damages with reasonable certainty to enable a jury to compute
them. Oryx Energy Co. v. Shelton, 942 S.W.2d 637, 642 (Tex. App.—Tyler 1996, no writ);
see also Goose Creek Consol. Ind. Sch. Dist. v. Jarrar's Plumbing, Inc., 74 S.W.3d 486,
496–97 (Tex. App.—Texarkana 2002, pet. denied) (finding owner of property may only
recover for such loss of use from trespass to land if reasonable value of use can be
established with fair certainty). 
          There is no evidence of the diminished value of the vehicle in its alleged defective
condition. Therefore, the jury's verdict of $5,000.00 diminished value has no support in the
record, and Crane and Ford's no-evidence challenge is sustained. We find it unnecessary
to address Crane and Ford's remaining challenge that Cooper's testimony referred to value
at time of trial, not time of purchase. 
Expenses
          Crane and Ford also contend there was no evidence to support the jury's verdict on
the expenses Cooper incurred. Under the DTPA, economic loss is determined by the total
loss sustained by the consumer as a result of the deceptive trade practice. Kish v. Van
Note, 692 S.W.2d 463, 466 (Tex. 1985). This standard envisions compensating plaintiffs
for "the total loss . . . includ[ing] related and reasonably necessary expenses." Henry S.
Miller Co. v. Bynum, 836 S.W.2d 160, 162 (Tex. 1992). Cooper testified to the various
evaluations he obtained from independent mechanics, but did not testify to any amount of
expense he incurred. The only offer made of the amount of expense Cooper incurred was
as follows:
          Q. Now, in getting all of the different independents to look at things,
and I believe we had some -- you had to buy your own tags and they didn't
even tag it for you, even though they charged you for it, how much -- Have
you spent about $1,100.00 in trying to get all of this done?
 
          [Defense Counsel]: Objection to leading.
 
          THE COURT: Sustained, . . . .
The trial court properly sustained the objection, and no other evidence on the amount of
expenses Cooper incurred was offered. As noted above, the burden is on the plaintiff to
establish his or her damages with reasonable certainty to enable a jury to compute them. 
Shelton, 942 S.W.2d at 642; see also Jarrar's Plumbing, Inc., 74 S.W.3d at 496–97. There
was no evidence admitted to enable the jury to compute any expenses Cooper incurred. 
The jury's verdict of $1,000.00 for expenses, therefore, has no support in the record, and
Crane and Ford's no-evidence challenge is sustained.
Additional Damages
          As there was no evidence of economic damages, additional damages cannot be
awarded. Tex. Bus. & Com. Code Ann. § 17.50(b)(1); see Nabours v. Longview Sav. &
Loan Ass'n, 700 S.W.2d 901, 903 (Tex. 1985) (exemplary or punitive damages may not
be recovered in absence of award of actual damages).
Disposition
          Crane and Ford request that we reverse the judgment of the trial court and render
judgment that Cooper take nothing. The general rule is, where an appellate court finds the
evidence legally insufficient to support a damages verdict, the court should reverse and
render a take-nothing judgment as to that amount. Larson v. Cactus Util. Co., 730 S.W.2d
640, 641 (Tex. 1987); Nat'l Life & Accident Ins. Co. v. Blagg, 438 S.W.2d 905, 909 (Tex.
1969) (when appellate court sustains "no-evidence" point, it is generally court's duty to
render judgment for appellant); see also Lewis, 709 S.W.2d at 176 (finding duty to render
take-nothing judgment when appellant's "no-evidence" point is sustained is basic rule of
law). 
          Under certain circumstances, however, an appellate court may reverse and remand
a case for a new trial in the interests of justice. Tex. R. App. P. 43.3 provides, "[w]hen
reversing a trial court's judgment, the court must render the judgment that the trial court
should have rendered, except when: (a) a remand is necessary for further proceedings;
or (b) the interests of justice require a remand for another trial." Appellate courts have
broad discretion to exercise that power. Fanning v. Fanning, 847 S.W.2d 225, 226 (Tex.
1993); Scott v. Liebman, 404 S.W.2d 288, 294 (Tex. 1966).
          Appellate courts have reversed for a new trial where, among other circumstances,



the plaintiff failed to show damages with reasonable certainty, but the interests of justice
required the plaintiff be given an opportunity to show the proper measure of his or her
damages. Porras, 675 S.W.2d at 506; Varel Mfg. Co. v. Acetylene Oxygen Co., 990
S.W.2d 486, 500 (Tex. App.—Corpus Christi 1999, no pet.); Williams v. Gaines, 943
S.W.2d 185, 193 (Tex. App.—Amarillo 1997, writ denied); A.B.F. Freight Sys., Inc. v.
Austrian Import Serv., Inc., 798 S.W.2d 606, 616 (Tex. App.—Dallas 1990, writ denied);
Powell-Buick-Pontiac GMC, Inc. v. Bowers, 718 S.W.2d 12, 14 (Tex. App.—Tyler 1986,
writ ref'd n.r.e.). 
          In Williams, 943 S.W.2d at 193, the Amarillo Court of Appeals found no evidence
was presented that met the definition of fair market value in the jury's instructions. The
court, however, remanded the matter for a new trial. As relevant interests of justice, the
court cited the jury's findings that the plaintiff and defendant had an agreement, that the
defendant breached the agreement, and that the plaintiff sustained some loss as a result. 
Id.; see also A.B.F. Freight Sys., Inc., 798 S.W.2d at 616 (finding that, although plaintiff did
not prove its damages with reasonable certainty, there was some evidence which showed
damages generally, and interests of justice, therefore, required remand for new trial);
Bowers, 718 S.W.2d at 14 (although finding no evidence to support jury's findings on
plaintiff's DTPA claim, record demonstrated plaintiff did sustain some damages, and cause
was therefore remanded for new trial in interests of justice).
          We find similar interests of justice here. The jury found Crane and Ford engaged
in one or more false, misleading, or deceptive acts or practices that were a producing
cause of actual damages to Cooper, that they failed to comply with a warranty that was a
producing cause of damages to Cooper, and that such conduct by Crane and Ford, in one
or both instances, was committed knowingly. Under these circumstances, we find the
interests of justice require a remand for another trial.


 
          We reverse the judgment and remand for a new trial. 
 

                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      December 18, 2003
Date Decided:         January 8, 2004